**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**NORTH AMERICAN CLEARING, INC.,**

                **Plaintiff,**

**-vs-**                              **Case No.  6:07-cv-1503-Orl-19KRS**

**BROKERAGE COMPUTER SYSTEMS,**
**INC.,**

                **Defendant.**

_____

## ORDER

This case comes before the Court on the following:

1.      Plaintiff North American Clearing, Inc.'s Motion To Dismiss Defendant Brokerage Computer Systems, Inc.'s Counterclaim (Doc. No. 20, filed Dec. 7, 2007); and

2.      Defendant's Memorandum Of Points And Authorities In Support Of BCS's Opposition To NAC's Motion To Dismiss (Doc. No. 25, filed Dec. 17, 2007).

**Background**

Plaintiff and Counter-Defendant North American Clearing, Inc. ("NAC") is a clearing broker that services broker dealers by purchasing and selling securities for them.  (Doc. No. 1 at p. 1, ¶ 3.) Defendant and Counter-Plaintiff Broker Computer Systems, Inc. ("BCS") is a California corporation in the business of providing and maintaining computer securities accounting systems.  (Doc. No. 7 at p. 2, ¶ 4.)  On approximately January 29, 2004, the parties entered into a Software License Agreement.  (Doc. No. 1 at pp. 9-24; Doc. No. 7-2.)  BCS licensed to NAC a single multi-component computer program known as the BCS Securities Management System.  (Doc. No. 1 at

p. 9; Doc. No. 7-2 at p. 2.)   This system included BrokerTrak, Web Based Service, and Trade Interceptor.  (Doc. No. 1 at p. 9; Doc. No. 7-2 at p. 2.)

On June 10, 2004, the parties created an Amendment to the Software License Agreement. (Doc. No. 1 at p. 3, ¶ 15; Doc. No. 7 at p. 15, ¶ 4; Doc. No. 7-3.)  In this Amendment, the parties agreed to collaborate in an effort to: (1) recode the BrokerTrak software from the programming language Clipper 5.2e to the programming language C++ and (2) convert the Extended Systems Advantage database to the SQL database.  (Doc. No. 1 at p. 26; Doc. No. 7-3 at p. 1.)  The Amendment further provided that NAC's monthly licensing fee would be reduced by $1,000 "to compensate LICENSEE for assisting LICENSOR in the Recoding Project and the Database Conversion."  (Doc. No. 1 at p. 27, ¶ 4; Doc. No. 7-3 at p. 2, ¶ 4.)

NAC  brought this action in September of 2007, claiming breach of contract.  (Doc. No. 1 at p. 5, ¶ 34.)  NAC also sought declaratory relief that it is "permitted to further revise the software, that NAC is entitled to use the revised software in accordance with the terms of the Amendment, and that NAC can utilize the revised software as long as it continues to make payments in accordance with the terms of the Amendment."  (*Id.* at pp. 6-7, ¶ B.)

BCS has denied NAC's claims and asserted twenty-one affirmative defenses.  (Doc. No. 7 at pp. 4-14.)   BCS has also brought nine counterclaims against Plaintiff.  (*Id.* at pp. 19-41, ¶¶ 15-91.)  BCS alleges: (1) breach of contract; (2) intentional misrepresentation / fraud; (3) negligent misrepresentation; (4) breach of fiduciary duty; (5) conversion; (6) unjust enrichment; (7) violation of the Lanham Act; (8) a request for permanent injunction; and (9) a request for declaratory relief. (*Id.*)  NAC moves the Court to dismiss these counterclaims, and BCS has filed a Response in opposition to this Motion.  (Doc. Nos. 20, 25.)

## Standard of Review

For the purposes of a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences drawn from such pleading.  *E.g.*, *Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (abrogated on other grounds).  The Court must limit its consideration to this pleading and the written instruments attached to it as exhibits. Fed. R. Civ. P. 12(d); *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007).

## Analysis

### I.      Count I

NAC first argues that the Court should dismiss BCS's breach of contract claim because this claim is affirmatively contradicted by the License Agreement and Amendment attached to both NAC's Complaint and BCS's Counterclaim.  (Doc. No. 20 at pp. 5-8.)  BCS denies NAC's argument and states that it has properly pled the elements for breach of contract under Florida law.  (Doc. No. 25 at pp. 3-5.)

Florida has adopted the Uniform Commercial Code ("U.C.C.") which applies to contracts for the sale of goods.  §§ 672.101-672.724, Fla. Stat. (2007).  Under Florida law, "It is elementary that in order to recover on a claim for breach of contract the burden is upon the claimant to prove by a preponderance of the evidence the existence of a contract, a breach thereof and damages

flowing from the breach." *Horowitch v. Diamond Aircraft Indus., Inc.*, No. 6:06-cv-1703-Orl-19KRS, __ F. Supp. 2d __, 2007 WL 2714094, at *3 (M.D. Fla. Sept. 17, 2007) (quoting *Knowles v. C.I.T. Corp.*, 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977)).

NAC argues specifically that the element of breach is negated by the License Agreement and Amendment. (Doc. No. 20 at pp. 5-8.) BCS stated in its Counterclaim:

> [NAC] breached the breached both the Original Agreement and First Amendment by decompiling and "reverse engineering" the original BCS software or the new BrokerTrak program without BCS' consent or supervision. [NAC] breached the agreements by copying, decompiling and reverse engineering BCS' proprietary software, as evidenced by the fact that NAC changed the name of the new BCS software program from BrokerTrak to BOS. [NAC] breached the agreements because it determined that it would not be able to finalize the new BrokerTrak program prior to the termination of the license to use the original BCS software. [NAC] breached the Original Agreement and First Amendment because it did not wish to continue to pay royalties to BCS under the agreements.

(Doc. No. 7 at p. 21, ¶ 23.) BCS also listed the specific provisions of the License Agreement and Amendment that it alleges NAC violated. (*Id.* at p. 21.) However, NAC claims that the conduct of which BCS complains is specifically permitted by the contract at issue. (Doc. No. 20 at pp. 5-8.)

In its Motion to dismiss, NAC asks this Court to make findings of fact and conclusions of law regarding the terms of the contract and the parties' conduct in order to determine that BCS's claim is "negated" by the License Agreement and Amendment. These are inappropriate considerations under Federal Rule of Civil Procedure 12(b)(6). Under this Rule, the Court considers only whether a party has stated a claim upon which relief may be granted. Since BCS has provided a short and plain statement of its claim for breach of contract, BCS has met the requirements for notice pleading. Therefore, NAC's Motion to dismiss Count I of the Counterclaim must be denied.

II.       **Counts II-V**

NAC next moves the Court to dismiss BCS's claims for intentional misrepresentation, negligent misrepresentation, breach of fiduciary duty, and conversion.  (Doc. No. 20 at pp. 8-15.) NAC argues that these claims are barred by Florida's Economic Loss Rule.  (*Id.*)  BCS responds that the Economic Loss Rule does not apply in this case.  (Doc. No. 25 at pp. 6-14.)

The Florida Supreme Court has explained, "The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004).  Economic losses are "disappointed economic expectations," or more broadly "the loss of the benefit of the bargain." *Id.* at n. 1.  The rule applies in two different circumstances: (1) "when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract," and (2) "when there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property." *Id.* at 536.

The purpose of the contractual privity Economic Loss Rule is "to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Id.*[1]  Accordingly, "courts have held that a tort action is barred where a

---

[1]       The Florida Supreme Court further explained:

> Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process. A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement.

(continued...)

defendant has not committed a breach of duty apart from a breach of contract." *Id.* at 537.   A tort action is not barred, however, when the tort is "committed independently of the contract breach." *Id.*  If a tort requires proof of facts "separate and distinct from the breach of contract," then the tort is independent. *Id.* (quoting *HTP, Ltd. v. Lineas Aereas Constarricenses, S.A.*, 685 So.2d 1238, 1239 (Fla. 1996)).

### A.   Fraud in the Inducement: Intentional and Negligent Misrepresentation

Under Florida law, the elements of fraud in the inducement are: (1) that the defendant misrepresented a material fact; (2) that the defendant knew or should have known that the statement was false; (3) that the defendant intended that the representation would induce the plaintiff to enter into a contract or business relation; and (4) that the plaintiff was injured by acting in justifiable reliance on the misrepresentation. *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1425 (S.D. Fla. 1996) (citing *Johnson v. Davis*, 480 So.2d 625, 627 (Fla. 1985)).  Fraud in the inducement may be considered a tort independent of a contract claim. *Indemnity Ins. Co. of N. Am.*, 891 So. 2d at 537. However, no action for this tort will lie where the alleged fraud contradicts a subsequent written contract. *Topp, Inc. v. Uniden Am. Corp.*, 513 F. Supp. 2d 1345, 1348 (S.D. Fla. 2007) (citing *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1342 (S.D. Fla. 1999)).  When alleged misrepresentations "are discussed and incorporated into a written contract containing a merger clause that supercedes all prior representations and agreements, the economic loss rule bars recovery for fraudulent inducement." *Id.* (collecting Florida cases).  A party cannot take a position contradictory to a contract that plainly and unambiguously states that there are no

---

[1](...continued)
*Indemnity Ins. Co. of N. Am.*, 891 So.2d at 536-37.

-6-

other agreements or representations other than those contained in the contract.  *Id.*  Furthermore,

misrepresentations relating to the breaching party's performance under a contract do not give rise

to an independent cause of action, because such misrepresentations are interwoven and indistinct

from the heart of the contractual agreement.  *Id.* at 1348-49; *see also Royal Surplus Ins. Co. v.*

*Coachman Indus., Inc.*, 184 F. App'x 894, 902 (11th Cir. 2006) (holding that Florida's Economic

Loss Rule barred claims of negligence, breach of fiduciary duty, fraud, deceit, and misrepresentation

that were based on "the same information that provided the basis for the breach of contract claim").

> In its claims for intentional and negligent representation, BCS alleges:

> [NAC], both orally and in writing, represented and promised BCS that they would
> at all times comply with the terms and provisions of the Original Agreement and
> First Amendment, which, as described in detail above, defined the rights,
> responsibilities, and obligations between the parties.   The promises and
> representations by [NAC] were false in that [NAC], at all times, never intended  to
> abide by these promises and representations.

(Doc. No. 7 at p. 24, ¶ 32; *see also id.* at p. 28, ¶ 45.)  These allegedly fraudulent oral and written

representations, however, have been incorporated in the contract.  The License Agreement attached

to BCS's Counterclaim includes a merger provision that states:

> Section 8.09.  **Entire Agreement:**  LICENSEE acknowledges and agrees that this
> Agreement is the complete and exclusive statement of the mutual understanding of
> the parties and that it supersedes and cancels all previous written and oral agreements
> and communications relating to the subject matter of this Agreement.

(Doc. No. 7-2 at p. 14.)  Also, the Amendment to this Agreement provides: "Except as expressly

modified herein, the terms of the AGREEMENT shall remain in full force and effect."  (Doc. No.

7-3 at p. 4.)  Thus, the alleged misrepresentations are no longer distinct from the contract itself and

therefore cannot serve as the basis for an independent tort cause of action.  The alleged fraud is

interwoven with BCS's breach of contract claim, and BCS has not pled additional conduct that

would constitute an independent tort. Therefore, the Court must dismiss Counts II and III of the Counterclaim for intentional and negligent misrepresentation.

### B.        Breach of Fiduciary Duty

Florida courts have recognized a cause of action for breach of fiduciary duty. *Doe v. Evans*, 814 So.2d 370, 374 (Fla. 2002). A fiduciary relationship exists between two persons when "one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation." *Id.* (quoting Restatement (Second) of Torts § 874 cmt. a). While the Economic Loss Rule does not automatically bar a breach of fiduciary duty claim, the rule does apply when the claim for breach of fiduciary duty is based upon and inextricably intertwined with the claim for breach of contract. *Royal Surplus Ins. Co.*, 184 F. App'x at 902; *Granat v. Axa Equitable Life Ins. Co.*, No. 06-civ-21197, 2006 WL 3826785, at **3-5 (S.D. Fla. Dec. 27, 2006); *Detwiler v. Bank of Cent. Fla.*, 736 So.2d 757, 759 (Fla. 5th DCA 1999).

In the current case, BCS's claims for breach of contract and breach of fiduciary duty are virtually identical. (*Compare* Doc. No. 7 at pp. 21-22, ¶¶ 23-24(f) *with id.* at pp. 33-34, ¶¶ 57-58(f).) BCS asserts that the fiduciary duty exists "by virtue of [NAC] entering into the Original Agreement and First Amendment wherein [NAC] obtained a license for [BCS's] proprietary software." (Doc. No. 7 at p. 32, ¶ 56.) Further, the fiduciary relationship "arose" when BCS "entrusted [NAC] with its proprietary software . . . ." (*Id.*) BCS claims that NAC "breached its fiduciary duty under both the Original Agreement and First Amendment . . . ." (*Id.* ¶ 57.) Here, BCS merely restates its breach of contract claim under a breach of fiduciary label. BCS has failed to plead an independent tort; therefore, the Court must dismiss Count IV of the Counterclaim.

### C.   Conversion

A claim for conversion has three elements: (1) act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein. *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1294 (S.D. Fla. 2001).  Conversion claims which are independent of a breach of contract are not barred by the Economic Loss Rule. *Duncan v. Kasim, Inc.*, 801 So.2d 968, 970 (Fla. 5th DCA 2002).  Where the alleged conduct is "not merely a failure to perform, but an affirmative and intentional act of converting the [property] to [the defendant's] own use . . . there is not merely a breach of contract but a separate and independent tort." *Burke v. Napieracz*, 674 So.2d 756, 758 (Fla. 1st DCA 1996).

BCS claims that NAC "converted BCS' property by 'reverse engineering' and decompiling BCS' software, including BCS' original Clipper software, BCS' source codes, the new BrokerTrak software, and BCS' executable program files . . . ."  (Doc. No. 7 at p. 35, ¶ 65.)  BCS here alleges that NAC not only breached the License Agreement but also converted the software entrusted to it for its own use.  Therefore, BCS has pled a tort independent from the contract, and the Court must deny NAC's Motion to dismiss Count V of the Counterclaim.

### III.   Count VI

Next, NAC moves the Court to dismiss BCS's unjust enrichment claim because there exists an express contract.  (Doc. No. 20 at pp. 15-16.)  Under Florida law, a claimant may argue breach of contract and, in the alternative, unjust enrichment when the existence of the contract is in dispute. *Manicini Enters., Inc. v. Am. Express Co.*, 236 F.R.D. 695, 699 (S.D. Fla. 2006).  However, a claimant may not pursue an equitable theory such as unjust enrichment if an express contract exists. *Ocean Commc'ns, Inc. v. Bubeck*, 956 So.2d 1222, 1225 (Fla. 4th DCA 2007).  In this case, NAC

does not dispute the existence of an express contract.  (Doc. No. 20 at pp. 15-16.)  Both parties have

filed the same License Agreement and Amendment as the express contract.  (Doc. No. 1 at pp. 8-29;

Doc. Nos. 7-2, 7-3.)  Therefore, BCS may not pursue a quasi-contract claim of unjust enrichment,

and the Court must dismiss Count VI of the Counterclaim.

## IV.    Count VII

NAC argues that the Court should dismiss BCS's claim that NAC's conduct violates the

Lanham Act because the License Agreement and Amendment authorizes such conduct.  (Doc. No.

20 at pp. 17-18.)  Additionally, NAC claims that BCS has not alleged that the software has been

distributed to any third parties as required to show confusion of origin under the Act.  (*Id.*)

The relevant section of the Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container
> for goods, uses in commerce any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which--
> (A)     is likely to cause confusion, or to cause mistake, or to deceive as to the
>         affiliation, connection, or association of such person with another person, or
>         as to the origin, sponsorship, or approval of his or her goods, services, or
>         commercial activities by another person, or
> (B)     in commercial advertising or promotion, misrepresents the nature,
>         characteristics, qualities, or geographic origin of his or her or another
>         person's goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is or is
> likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  The United States Supreme Court has explained that this provision is

violated when there is "reverse passing off," which means that a "producer misrepresents someone

else's goods or services as his own."  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S.

23, 27 n. 1 (2003).

BCS alleges that NAC has violated the Lanham Act by "reverse passing off" BCS's proprietary software.  (Doc. No. 7 at p. 38, ¶ 78.)  BCS claims that NAC used and/or marketed BCS's software under a claim of ownership and introduced the software into interstate commerce as if it were its own.  (*Id.*)  While NAC denies the factual accuracy of these claims (Doc. No. 20 at p. 17), the standard of review for a motion to dismiss requires the Court to accept these claims as true.  *See Jackson*, 21 F.3d at 1534.  Thus, BCS has stated a claim of a violation of the Lanham Act, and the Court must deny NAC's Motion to dismiss Count VII.

**V.      Count VIII**

NAC argues that BCS improperly asserts its claim for a permanent injunction as a cause of action and therefore Count VIII of the Counterclaim should be dismissed.  (Doc. No. 20 at pp. 16-17.)  Essentially, NAC is making a technical argument that the request for a permanent injunction is really a prayer for relief rather than a cause of action.  (*See id.*)

The Eleventh Circuit Court of Appeals has explained, "There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed.R.Civ.P. 12(b)(6) (failure to state a claim)."  *Alabama v. United States Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005).  An injunction is "a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed-if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise."  *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004).

To the extent that NAC argues that Count VIII of the Counterclaim is improperly labeled as a "Cause of Action" rather than a prayer for relief, the Court agrees.  The Court construes Count VIII

as one of the remedies sought for the alleged violation of the Lanham Act in Count VII and strikes

only the language designating the demand for a permanent injunction as a separate cause of action.

## V.      Count IX

NAC argues that BCS's claim for a declaration of its rights under the contract should be

dismissed as negated by the License Agreement and Amendment. (Doc. No. 20 at pp. 5-8.) NAC

argues that this claim should be dismissed for the same reasons the breach of contract claim should

be dismissed. (*Id.*) As the Court explained above in Section I, NAC asks the Court to make findings

of fact and conclusions of law in order to find that BCS's claims are "negated." The Court cannot

make such findings on a Motion to dismiss, and therefore the Court denies NAC's Motion to dismiss

Count IX of the Counterclaim.

## Conclusion

Based on the foregoing, NAC's Motion to dismiss is **GRANTED IN PART AND DENIED**

**IN PART**. (Doc. No. 20.) NAC's Motion to dismiss Counts I, V, VII, and IX of the Counterclaim

is **DENIED**. NAC's Motion to dismiss Count VIII is **GRANTED IN PART**. NAC's Motion to

dismiss Counts II, III, IV, and VI is **GRANTED**, and these Counts are dismissed without prejudice.

BCS has leave to file an Amended Counterclaim that comports with this Order within ten (10) days

from the date of this Order.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on February 5 , 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:
Counsel of Record