NORTH AMERICAN CLEARING, INC.,

    **Plaintiff,**

-vs-            **Case No. 6:07-cv-1503-Orl-19KRS**

BROKERAGE COMPUTER SYSTEMS, INC.,

    **Defendant.**
_____

BROKERAGE COMPUTER SYSTEMS, INC.,

    **Plaintiff,**

-vs-            **Case No. 6:08-cv-1567-Orl-19KRS**

RICHARD L. GOBLE,
BRUCE B. BLATMAN,
TIMOTHY J. WARD,

    **Defendants.**
_____

# ORDER

This case comes before the Court on the following:

1. Motion to Dismiss Plaintiff's Complaint by Defendant Richard L. Goble (Case No. 6:08-cv-1567-Orl-19KRS, Doc. No. 26, filed Oct. 1, 2008);

2. Opposition to Defendant Richard Goble's Motion to Dismiss Complaint by Plaintiff Brokerage Computer Systems, Inc. (Case No. 6:08-cv-1567-Orl-19KRS, Doc. No. 30, filed Oct. 13, 2008);

3. Motion to Dismiss and Supporting Memorandum of Law by Defendant Bruce Blatman (Case No. 6:08-cv-1567-Orl-19KRS, Doc. No. 31, filed Oct. 20, 2008);

4.      Motion to Dismiss Timothy J. Ward from Case by Defendant Timothy J. Ward (Case No. 6:08-cv-1567-Orl-19KRS, Doc. No. 33, filed Oct. 23, 2008);

5.      Opposition to Defendant Bruce Blatman's Motion to Dismiss Complaint by Plaintiff Brokerage Computer Systems, Inc. (Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 65, filed Nov. 6, 2008);

6.      Opposition to Defendant Timothy Ward's Motion to Dismiss Complaint by Plaintiff Brokerage Computer Systems, Inc. (Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 66, filed Nov. 10, 2008);

7.      Joint Stipulation of Voluntary Dismissal as to Defendant Bruce Blatman (Case No. 6:08-cv-1567-Orl-19KRS, Doc. No. 42, filed Feb. 17, 2009);

8.      Joint Stipulation of Voluntary Dismissal as to Defendant Timothy J. Ward (Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 81, filed Feb. 27, 2009);

9.      Amended Complaint by Plaintiff Brokerage Computer Systems, Inc. (Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 89, filed Apr. 10, 2009);

10.     Motion to Dismiss Plaintiff's Amended Complaint by Defendant Richard L. Goble (Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 91, filed Apr. 28, 2009); and

11.     Opposition to Defendant Richard Goble's Motion to Dismiss Plaintiff's Amended Complaint by Plaintiff Brokerage Computer Systems, Inc. (Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 94, filed May 14, 2009).

**Background**

I.      **Factual Allegations**[1]

Broker Computer Systems, Inc. ("BCS") is a California corporation in the business of providing and maintaining computer securities accounting systems. (Case No. 6:07-cv-1503-Orl-19KRS,[2] Doc. No. 39 at 1, filed Feb. 5, 2008.) North American Clearing, Inc. ("NAC") is a clearing broker that services broker dealers by purchasing and selling securities for them. (*Id.*) On approximately January 29, 2004, BCS and NAC entered into a Software License Agreement. (*Id.*) BCS licensed to NAC a single multi-component computer program known as the BCS Securities Management System. (*Id.*) This system included BrokerTrak, Web Based Service, and Trade Interceptor. (*Id.* at 2.)

On June 10, 2004, BCS and NAC entered into an Amendment to the License Agreement. (*Id.*) In this Amendment, the parties agreed to collaborate in an effort to: (1) recode the BrokerTrak software from the programming language Clipper 5.2e to the programming language C++ and (2) convert the Extended Systems Advantage database to the SQL database. (*Id.*) The Amendment further provided that NAC's monthly licensing fee would be reduced by $1,000 "to compensate LICENSEE for assisting LICENSOR in the Recoding Project and the Database Conversion." (*Id.*)

According to BCS, in September of 2007, BCS learned that officers and employees of NAC "viewed, copied, reverse engineered[,] and decompiled executable program files, expressly prohibited by and in violation of the Original Agreement." (Case No. 07-1503, Doc. No. 89 at 5.)

------

[1]  The factual allegations are stated for purposes of context and should not be construed as findings of fact.

[2]  This case will be referred to in the text of this Order as "the 07-1503 case" and will be cited as "Case No. 07-1503."

BCS also alleges that the officers of NAC, "in an attempt to hide the fact that they were copying, decompiling[,] and reverse engineering BCS's proprietary software, . . . changed the name of the new BCS software program from BrokerTrak to BOS." (*Id.* at 7.) BCS contends that NAC "determined that it would not be able to finalize the new BrokerTrak program prior to the termination of the license to use the original BCS software." (*Id.*) Therefore, BCS claims, "NAC breached the agreements because it did not wish to continue to pay royalties to BCS under the agreements." (*Id.*)

## II.    Procedural History

BCS was originally a defendant in the 07-1503 case brought by NAC alleging breach of contract and also seeking declaratory relief. (Case No. 07-1503, Doc. No. 1, filed Sept. 21, 2007.) BCS answered the Complaint and filed a Counterclaim asserting nine claims: (1) breach of contract; (2) intentional misrepresentation / fraud; (3) negligent misrepresentation; (4) breach of fiduciary duty; (5) conversion; (6) unjust enrichment; (7) violation of the Lanham Act, 15 U.S.C. § 1125 (2006); (8) permanent injunctive relief; and (9) declaratory relief. (Case No. 07-1503, Doc. No. 7, filed Nov. 16, 2007.) Upon NAC's Motion, the Court dismissed BCS' second, third, and fourth claims under Florida's economic loss rule, dismissed the sixth claim as a quasi-contract claim barred by the existence of an actual contract, and struck the designation of claim eight as a separate cause of action and construed it as a prayer for relief. (Case No. 07-1503, Doc. No. 39.) With the Court's leave, BCS filed an Amended Counterclaim comporting with the February 5, 2008 Order. (Case No. 07-1503, Doc. No. 40, filed Feb. 15, 2008.)

After the close of discovery and the dispositive motions deadline, Notice was filed in the record informing the Court that NAC was the subject of a bankruptcy liquidation proceeding. (Case

No. 07-1503, Doc. No. 59, filed Aug. 25, 2008.)  Therefore, the 07-1503 case was stayed pending resolution of the bankruptcy proceedings.  (Case No. 07-1503, Doc. No. 60, filed Sept. 3, 2008.) BCS then filed a separate action against the individual corporate officers of NAC in case number 6:08-cv-1567-Orl-19KRS.[3]  The two actions were later consolidated, although the claims against NAC remained stayed.  (Case No. 07-1503, Doc. No. 63, filed Oct. 24, 2008.)

Defendants Richard L. Goble, Bruce B. Blatman, and Timothy J. Ward, the individual corporate officers of NAC, filed Motions to Dismiss the Complaint of BCS.  (Case No. 08-1567, Doc. Nos. 26, 31, 33.)  BCS responded in opposition to these Motions.  (Case No. 08-1567, Doc. No. 30; Case No. 07-1503, Doc. Nos. 65-66.)  Sometime later, Blatman and Ward each filed "Joint Stipulations" in the record purporting to dismiss these two Defendants from the case with prejudice with the consent of BCS.  (Case No. 08-1567, Doc. No. 42; Case No. 07-1503, Doc. No. 81.)

After the filing of the Joint Stipulations and with the leave of the Court, BCS filed an Amended Complaint which asserts six claims: (1) breach of contract; (2) conversion; (3) violation of the Lanham Act, 15 U.S.C. § 1125; (4) fraud; (5) declaratory relief; and (6) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.204(1), Fla. Stat. (2007).  (Case No. 07-1503, Doc. No. 89.)  Goble has filed a corresponding Motion to Dismiss which incorporates the arguments raised in his previously-filed Motion.  (Case No. 07-1503, Doc. No. 91.)  In response, BCS has filed an opposition to Goble's second Motion to Dismiss.  (Case No. 07-1503, Doc. No. 94.)

---

[3] The second-filed case will be referred to as "the 08-1567 case" in the text of this Order and cited as "Case No. 08-1567."

**Standard of Review**

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, ___, 127 S. Ct. 2499, 2509 (2007) (citation omitted); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 127 S. Ct. at 2509 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, No. 07-1015, __ U.S. __, __ S. Ct. __, 2009 WL 1361536, at *13 (May 18, 2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at *12-*13 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at *12 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at *13 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint

> pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at *12 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at *13-*14.

## Analysis

## I.     Amended Complaint's Compliance with Prior Court Order and Procedural Rules

When BCS was granted leave to file an Amended Complaint, the Court found that the proposed Amended Complaint was unclear as to which individuals remained as Defendants in the case. (Case No. 07-1503, Doc. No. 86 at 8-9, filed Mar. 31, 2009.) Accordingly, the Court ordered: "To avoid confusion, a more definite statement is warranted, in which BCS clearly identifies in the case style the remaining Defendants and references the appropriate number of Defendants throughout its pleadings." (*Id.* at 8.)

In the Amended Complaint, BCS states that it "sues Richard L. Goble (hereinafter, 'Defendant')." (Case No. 07-1503, Doc. No. 89 at 1.) However, the case style of the Amended Complaint names "RICHARD L. GOBLE, an individual, et al., Defendants." (*Id.*) This caption poses at least two problems. First, the use of "et al." violates Federal Rule of Civil Procedure 10(a) which states that "[t]he title of the complaint must name all the parties." Secondly, it fails to comply with the Court's prior instruction to clarify the remaining Defendants in the case. Because the only individual specifically described in the substantive allegations of the Amended Complaint is Defendant Goble, the Court orders stricken the phrase "et al." and the plural form of "Defendants" from the caption of the 08-1567 case in the Amended Complaint.

## II.     Motions to Dismiss

### A.     Defendants Blatman and Ward

Currently pending before the Court are the Motions to Dismiss of Defendants Goble, Blatman, and Ward.  (Case No. 08-1567, Doc. Nos. 26, 31, 33; Case No. 07-1503, Doc. No. 91.)  Since the filing of these Motions, Stipulations of Dismissal of Defendants Blatman and Ward have been entered in the record.  (Case No. 08-1567, Doc. No. 42; Case No. 07-1503, Doc. No. 81.)  These documents purport to dismiss BCS' claims against these Defendants with prejudice.  Both are signed by the attorney for BCS on behalf of BCS.  Ward signed his Joint Stipulation *pro se*, and the attorney for Blatman signed the Joint Stipulation on behalf of Blatman.  There are no other signatures on these documents; therefore, the Stipulations do not comply with Federal Rule of Civil Procedure 41(a)(1)(A)(ii) which requires that such voluntary dismissals be "signed by all parties who have appeared."

Nevertheless, Federal Rule of Civil Procedure 21 provides, "On motion or on its own, the court may at any time, on just terms, add or drop a party."  As explained by the Eleventh Circuit Court of Appeals, "Dropping or adding a party to a lawsuit pursuant to Rule 21 is left to the sound discretion of the trial court."  *Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, 1045 (11th Cir. 1986) (citations omitted).  Defendant Goble has not filed any objection to the dismissals of Defendants Blatman and Ward, and there is no apparent prejudice to him.  Moreover, the Court granted BCS leave to amend the Complaint, and the Amended Complaint sets forth claims against only Defendant Goble.  (Case No. 07-1503, Doc. Nos. 86, 89.)  Thus, BCS was acting in accordance with the Court's leave when it dropped Blatman and Ward as Defendants.  For these reasons, the Court finds that BCS' agreed dismissals of Defendants Blatman and Ward are "on just

terms," and these two Defendants' Motions to Dismiss on the merits of the case are denied as moot. (Case No. 08-1567, Doc. Nos. 31, 33.)

**B.     Defendant Goble**

In his Motions to Dismiss, Defendant Goble makes many of the same arguments made by NAC in its Motion to Dismiss the Counterclaim of BCS. (*Compare* Case No. 07-1503, Doc. No. 20, filed Dec. 7, 2007, *with* Case No. 08-1567, Doc. No. 26, *and* Case No. 07-1503, Doc. No. 91.) This is explained in part by the substantial similarity between the Amended Complaint of BCS against Goble and the Amended Counterclaim of BCS against NAC. (*Compare* Case No. 07-1503, Doc. No. 7, *and* Case No. 07-1503, Doc. No. 40, *with* Case No. 08-1567, Doc. No. 1, filed Sept. 11, 2008, *and* Case No. 07-1503, Doc. No. 89.) Goble repeats the arguments previously made by NAC and rejected by this Court as bases for dismissal that: (1) the License Agreement and Amendment negate the claims for breach of contract and declaratory relief, (2) the conversion claim is barred by the economic loss rule, and (3) the Lanham Act claim is contrary to the License Agreement and Amendment. (Case No. 07-1503, Doc. No. 20 at 5-8, 14-15, 17-18; Case No. 08-1567, Doc. No. 26 at 8-10, 14-17; Case No. 07-1503, Doc. No. 91 at 9-11, 15-17.) In its prior Order, the Court granted in part and denied in part NAC's Motion to Dismiss BCS' Counterclaim. (Case No. 07-1503, Doc. No. 39.) Regarding NAC's arguments that the License Agreement and Amendment "negated" or "were contrary to" the allegations in the breach of contract, declaratory relief, and Lanham Acts claims, the Court found that such arguments sought resolution of factual and legal matters that were not appropriate at the dismissal stage of the litigation and should be reserved for summary judgment. (*Id.* at 3-4, 10-11.) The Court also found that the conversion claim presents a tort independent from the contract because BCS alleges that NAC, through Goble, "not only

breached the License Agreement but also converted the software entrusted to it for its own use." (*Id.* at 9.) Goble provides no persuasive reason for the Court to reconsider its prior rulings, and the Court again rejects these arguments as bases to dismiss BCS' claims.

Goble also raises four arguments in his Motions to Dismiss that were not previously rejected by this Court. First, Goble contends that he cannot be held individually liable for breach of contract because he was not a party to the contract, the contracting parties had no intent to bind Goble individually, and the Complaint fails to adequately plead alter ego liability. (Case No. 08-1567, Doc. No. 26 at 5-8; Case No. 07-1503, Doc. No. 91 at 6-9.) Secondly, Goble states that the declaratory relief count asserts a claim against only a non-party, NAC, and not Goble individually. (Case No. 08-1567, Doc. No. 26 at 6; Case No. 07-1503, Doc. No. 91 at 7.) Next, he argues that the economic loss rule bars BCS' claim of fraud, and the Amended Complaint's language asserting the independent nature of the tort should be disregarded as merely conclusory. (Case No. 08-1567, Doc. No. 26 at 10-14; Case No. 07-1503, Doc. No. 91 at 11-14.) Finally, Goble states that BCS has failed to state a claim for violation of FDUTPA because the relevant pleadings are only boilerplate allegations, and in any event the License Agreement and Amendment permit the challenged conduct. (Case No. 07-1503, Doc. No. 91 at 17-19.) The Court considers each of these arguments in turn.

### 1. Breach of Contract

#### a. Contractual Language and Signatures on the Documents

In arguing for dismissal of BCS' breach of contract claim, Goble states that he is not individually liable under the contract because he is not a party to the License Agreement and Amendment which are attached to the Amended Complaint as exhibits. (Case No. 08-1567, Doc. No. 26 at 5-8; Case No. 07-1503, Doc. No. 91 at 6-9.) In response, BCS contends that: (1) Goble

is personally liable under the contract as the owner and founder of NAC and because he signed the License Agreement and Amendment; (2) the Amended Complaint includes allegations of Goble's personal breaches which must be assumed true on a motion to dismiss; (3) BCS has adequately pled alter ego liability; and (4) the Amended Complaint states a claim for breach of contract against Goble. (Case No. 08-1567, Doc. No. 30 at 5-10; Case No. 07-1503, Doc. No. 94 at 4-9.)

Under Florida law, "a person who signs a contract only in a corporate capacity is not bound as an agent." *Johnson v. Pires*, 968 So. 2d 700, 702 (Fla. 4th DCA 2007) (citations omitted). A party may designate his or her corporate capacity as follows:

> A signature preceded by the word 'by' and accompanied by *descriptio personae*, that is, language identifying the person signing the document as a corporate officer or something similar, does not create personal liability for the person signing a contract to which he or she is not a specified party, unless the contract contains language indicating personal liability or the assumption of personal obligations.

*Fairway Mortgage Solutions, Inc. v. Locust Gardens*, 988 So. 2d 678, 681 (Fla. 4th DCA 2008) (quotation marks omitted) (quoting *Robert C. Malt & Co. v. Carpet World Distribs., Inc.*, 763 So. 2d 508, 510-11 (Fla 4th DCA 2000)); *see also Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992) (quoting *Charter Air Center, Inc. v. Miller*, 348 So. 2d 614, 616-17 (Fla. 2d DCA 1977)).

In the instant case, the License Agreement states on its first page that it is an agreement between "Brokerage Computer Systems, Inc." and "Advantage Trading Group, Inc.," the predecessor corporation of NAC. (Case No. 07-1503, Doc. No. 89 at 3; Doc. No. 89-2 at 2.) The obligations and promises of the parties are described throughout the License Agreement as those made by "Licensor" and "Licensee." (Case No. 07-1503, Doc. No. 89-2 at 2-17.) On the signature page, the "Licensor" is defined as BCS, and the "Licensee" is defined as Advantage Trading Group,

Inc. (*Id.* at 15.) Below these designations are lines for signatures. (*Id.*) Underneath the phrase "Licensee: Advantage Trading Group, Inc." is the word "by" followed by a line for a signature. (*Id.*) The words "Richard Goble, President" are printed below this line. (*Id.*) The Amendment follows an identical pattern, except that "Advantage Trading Group, Inc." has been replaced by NAC as the licensee. (Case No. 07-1503, Doc. No. 89-3.)

Because the signature line begins with the word "by" and includes a description of Goble as the President of Advantage Trading Group, Inc. and NAC, Goble signed the License Agreement and Amendment in his corporate capacity. *Fairway Mortgage Solutions, Inc.*, 988 So. 2d at 681 (quoting *Robert C. Malt & Co.*, 763 So. 2d at 510-11). These contracts define the obligations and promises of the licensor, BCS, and the licensee, NAC (or its predecessor). (*See* Case No. 17-503, Doc. Nos. 89-2 and 89-3.) The contracts do not include any language indicating that the officers of the contracting corporations were personally obligated under the contract or otherwise accepted individual contractual liability. (*See id.*) Therefore, Goble is not liable under the contracts merely because of his signature on the documents or his position as a corporate officer. Goble may, however, be found personally liable for contractual breaches if BCS demonstrates that the corporate veil of NAC should be pierced because it was the alter ego of Goble.

### b. The Law Concerning Piercing the Corporate Veil

As explained by the United States Supreme Court, "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) (citations omitted). Therefore, "[t]he doctrine of piercing the corporate veil . . . is the rare exception, applied in the case of fraud or certain other exceptional circumstances, and usually determined on a case-by-case basis." *Id.* at 475 (citations omitted). The Eleventh Circuit,

in examining the doctrine of piercing the corporate veil under Florida law, quoted the Florida Supreme Court as follows: "Corporations are legal entities by fiction of law. Their purpose is generally to limit liability and serve a business convenience. Courts are reluctant to pierce the corporate veil and only in exceptional cases will they do so." *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998) (quoting *State ex rel. Cont'l Distilling Sales Co. v. Vocelle*, 27 So. 2d 728, 729 (Fla. 1946)). Thus, "so long as proper use is made of the fiction that a corporation is an entity apart from its stockholders, the fiction will not be ignored . . . ." *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1118 (Fla. 1984) (quoting *Riesen v. Md. Cas. Co.*, 14 So. 2d 197, 199 (Fla. 1943)); *accord Mayer v. Eastwood-Smith & Co.*, 164 So. 684, 687 (Fla. 1935) (en banc) (quoting *Biscayne Realty & Ins. Co. v. Ostend Realty Co.*, 148 So. 560, 561 (Fla. 1933) (en banc)).

The corporate fiction will be disregarded, however, if two elements are met: first, "the corporation is in actuality the alter ego of the stockholders," and second, "it was organized or after organization was employed by the stockholders for fraudulent or misleading purposes." *Dania Jai-Alai Palace, Inc.*, 450 So. 2d at 1120 (quoting *Advertects, Inc. v. Sawyer Indus., Inc.*, 84 So. 2d 21, 24 (Fla. 1955)). In explaining the first element, a judge on Florida's Fifth District Court of Appeal stated, "Under the basic alter ego theory (confusion of identities), the personal affairs of the shareholder become confused with the business affairs of the corporation. Individual liability under this theory rests in part on the fact that a shareholder has taken it upon himself to disregard the corporate entity." *Solomon v. Betras Plastics, Inc.*, 550 So. 2d 1182, 1184 (Fla. 5th DCA 1989) (Cobb, J., dissenting) (footnote omitted). Accordingly, "even if a corporation is merely an alter ego of its dominant shareholder or shareholders, the corporate veil cannot be pierced so long as the

corporation's separate identity was lawfully maintained." *Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. 3d DCA 2000) (citation omitted).

As to the second element, the Florida Supreme Court held that "the corporate veil may not be pierced absent a showing of improper conduct." *Dania Jai-Alai Palace, Inc.*, 450 So. 2d at 1121. In defining what conduct may be considered "improper" for purposes of piercing the corporate veil, the Eleventh Circuit quoted Florida's Supreme Court as stating, "[i]mproper conduct is present only in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose." *Johnson Enters. of Jacksonville, Inc.*, 162 F.3d at 1320 (quotation marks and alterations omitted) (quoting *Dania Jai-Alai Palace, Inc.*, 450 So. 2d at 1117). Conduct of shareholders may also be deemed improper "where the corporation was employed by the stockholders for fraudulent or misleading purposes, was organized or used to mislead creditors or to perpetrate a fraud upon them, or to evade existing personal liability." *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 648 (5th Cir. 2002) (quotation marks omitted) (quoting *Steinhardt v. Banks*, 511 So. 2d 336, 339 (Fla. 4th DCA 1987)). As further explained by the Florida Supreme Court:

> The rule that [the] corporate entity will be disregarded where [the] name of [a] corporation is used by [the] stockholders in transactions to mislead creditors or perpetrate fraud on them is but a logical sequence of the principle that a corporation cannot be formed for the purpose of accomplishing fraud or [some] other illegal act, under the guise of [the] fiction that the corporation is [a] legal entity separate and distinct from its members, since when fraud or [an] illegal act is attempted, [that] fiction will be disregarded by the court and the acts of the real parties dealt with as though no corporation had been formed.

*Dania Jai-Alai Palace, Inc.*, 450 So. 2d at 1117 (quoting *Mayer*, 164 So. at 687).

### c.    Application to the Instant Case

The Complaint includes the following allegations offered to support BCS' contention that

Goble acted as the alter ego of NAC:

> 6.    NAC's acts and obligations legally confer liability to Defendant, Richard L. Goble (also referred to as the "Defendant") because [NAC and Defendant] are alter egos of each other on the basis that there is a unity of interest and ownership such that the individuality, or separateness of each [sic] Defendant and NAC has ceased such that an adherence to the fiction of the separate existence of the Defendant and NAC would, under the particular circumstances, sanction a fraud or promote injustice.

> 7.    BCS alleges on information and belief that there is evidence of commingling of funds, that the Defendant treated NAC corporate assets as his own, that the Defendant held himself out for personal liability for the debts of NAC, that there was [sic] inadequate corporate records maintained by the Defendant and NAC, and that there is evidence of divergence of assets from the [sic] NAC by the Defendant.

> 8.    Defendant Richard L. Goble has liability for not only his actions, but also for all actions on the part of NAC, as a result of his alter ego status.

> 9.    Defendant Richard L. Goble has liability for not only his actions, but also for all actions on the part of NAC, as a result of the fact that he was a director and officer of NAC prior to, during, and/or after the wrongful conduct alleged herein.

(Case No. 07-1503, Doc. No. 89 at 2-3.)  These allegations are incorporated into the breach of

contract claim by BCS; therefore, the Court will consider whether such allegations sufficiently state

a basis for piercing the corporate veil so as to subject Goble to personal liability under the contract.

(*Id.* at 8.)

The United States Supreme Court has warned that, even under the presumptions favoring the

plaintiff on a Rule 12(b)(6) motion to dismiss, a court should not confuse conclusory allegations

with factual allegations.  *Iqbal*, 2009 WL 1361536, at *13 (citing *Twombly*, 550 U.S. at 555).  As

the Court has explained, "a plaintiff's obligation to provide the grounds of his entitlement to relief

[under Federal Rule of Civil Procedure 8(a)(2)] requires more than labels and conclusions, and a formulaic recitation of the elements will not do." *Twombly*, 550 U.S. at 555 (quotation marks, alteration, and citation omitted). The Court continued,

> Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id.* at 555 n.3 (citation omitted). In addition, the Court has stated, "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, the plaintiff must go beyond the "conclusory" and must offer "some further factual enhancement" in order to "enter the realm of plausible liability." *Twombly*, 550 U.S. at 557 & n.5.

The Eleventh Circuit has used similar language to review district court orders on motions to dismiss under Rule 12(b)(6). For example, the court has stated that "[c]onclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (alteration omitted) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)). The court further explained, "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." *Id.* at 1263.

With this standard in mind, the Court finds that the allegations of the Amended Complaint are merely conclusory as to NAC being the alter ego of Goble. In the Amended Complaint, BCS supports its claim with what appears to be language from the case law listing the elements of alter

ego status rather than with specific facts. These legal conclusions, couched as factual allegations, are not entitled to the presumption of truth. *Papasan*, 478 U.S. at 286. BCS fails to offer well-pled facts concerning how Goble utilized the corporate form for fraudulent, misleading, or improper purposes. Given the conclusory nature of BCS' allegations concerning Goble's alter ego liability, the Court finds that Goble's arguments are well-taken and concludes that BCS has not stated a claim for relief against Goble individually under the contract. Therefore, the first cause of action in the Amended Complaint must be dismissed. BCS has leave to replead this count with greater factual specificity.

### 2. Declaratory Relief

Next, Goble argues that BCS' claim for declaratory relief "asserts a claim merely against non-party NAC" and not Goble individually. (Case No. 08-1567, Doc. No. 26 at 6; *accord* Case No. 07-1503, Doc. No. 91 at 7.) The allegations setting forth the claim for declaratory relief (absent the incorporation provision) in the Amended Complaint are as follows:

> 108.   An actual controversy has arisen and exists between BCS and NAC, including individuals working for and with authority to bind NAC, including Defendant Goble, as set forth above. BCS desires a judicial determination of the rights and duties of the parties, if any, with respect to the Original Agreement and First Amendment. BCS desires a judicial determination that NAC, including individuals working for and with authority to bind NAC, including Defendant Goble, are prohibited from decompiling, "reverse engineering", viewing, copying, modifying, utilizing, making use of, disclosing, misappropriating, converting, stealing and/or selling BCS's proprietary software, BCS's original Clipper software, BCS's new BrokerTrak software, BCS's source code files, and BCS's executable program files.

> 109.   BCS desires a judicial determination that NAC, including Defendant Goble, must immediately return all of BCS's proprietary software, original Clipper software, new BrokerTrak software, source code files, and executable program files.

> 110.   BCS desires a judicial determination that Defendant Goble is individually liable to BCS for the conduct alleged herein.

111.    It is necessary and appropriate at this time for the Court to declare the rights and duties of the parties with respect to the Original Agreement and First Amendment, as well as the wrongful actions of Defendant Goble, as set forth above. Finally, it is necessary and appropriate for the court to specifically declare that the contentions of BCS are correct.

(Case. No. 07-1503, Doc. No. 89 at 26.)

Goble is correct that almost all of these allegations concern NAC's contractual obligations. References to Goble in this count do not discuss his individual obligations but instead describe his status as an agent of NAC for whose actions NAC should be deemed responsible. (*Id.*) Because in substance this claim seeks a declaration of NAC's duties and obligations under the contract, and NAC is not a party to the Amended Complaint, the allegations in this count are improper. Due to the multiple references to NAC's contractual obligations, the relief requested as to Goble, as distinct from NAC, is unclear. This ambiguity in the pleadings does not meet the notice requirements of Federal Rule of Civil Procedure 8(a)(2). Accordingly, BCS' fifth cause of action must be dismissed. BCS has leave to replead this count, eliminating requested declarations as to the rights and obligations of NAC and including a more definite statement concerning the relief requested from Goble individually.

### 3.    Fraud

With respect to BCS' claim of fraud, Goble argues that the claim is barred by the economic loss rule because the alleged fraud does not constitute a tort independent of the rights and obligations set forth in the License Agreement and Amendment. (Case No. 08-1567, Doc. No. 26 at 10-14; Case No. 07-1503, Doc. No. 91 at 11-14.) In response, BCS claims that it has alleged new facts in the Amended Complaint which demonstrate that the fraud is independent of the alleged breaches of contract. (Case No. 08-1567, Doc. No. 30 at 10-15; Case No. 07-1503, Doc. No. 94 at 9-14.)

The Florida Supreme Court has explained, "The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004) (footnote omitted). Economic losses are "disappointed economic expectations," or more broadly, "the loss of the benefit of the bargain." *Id.* at n.1 (citation and quotation marks omitted). The rule applies in two different circumstances: (1) "when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract," and (2) "when there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property." *Id.* at 536.

The purpose of the contractual privity economic loss rule is "to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Id.* (citation omitted). As the Florida Supreme Court explained:

> Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process. A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement.

*Id.* at 536-37. Pursuant to the economic loss rule, "courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract." *Id.* at 537 (citations omitted). A tort action is not barred, however, when the tort is "committed independently of the contract breach." *Id.* If a tort requires proof of facts "separate and distinct from the breach of contract," then the tort is independent. *Id.* (quoting *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996)).

Fraud *may* be considered a tort independent of a contract claim. *Indem. Ins. Co. of N. Am.*, 891 So. 2d at 537; *HTP, Ltd.*, 685 So. 2d at 1239-40. However, if a claim for fraud "simply restates a claim for breach of contract, the tort claim is barred." *Topp, Inc. v. Uniden Am. Corp.*, 513 F. Supp. 2d 1345, 1348 (S.D. Fla. 2007) (citing *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1354 (S.D. Fla. 1999), *aff'd*, 235 F.3d 1344 (11th Cir. 2000)). Moreover, no action for fraud will lie where the alleged fraud contradicts a subsequent written contract. *E.g.*, *Topp, Inc.*, 513 F. Supp. 2d at 1348 (citing *Eclipse Med., Inc.*, 262 F. Supp. 2d at 1342); *Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364, 1367-68 (S.D. Fla. 2003). "[W]hen alleged misrepresentations are discussed and incorporated into a written contract containing a merger clause that supercedes all prior representations and agreements, the economic loss rule bars recovery for fraudulent inducement." *Topp, Inc.*, 513 F. Supp. 2d at 1348 (collecting Florida cases). A party cannot take a position contradictory to a contract that plainly and unambiguously states that there are no other agreements or representations other than those contained in the contract. *E.g.*, *id.*; *Johnson Enters. of Jacksonville, Inc.*, 162 F.3d at 1315; *Pettinelli v. Danzig*, 722 F.2d 706, 710 (11th Cir. 1984); *Ben-Yishay, M.D. v. Mastercraft Dev., L.L.C.*, 553 F. Supp. 2d 1360, 1370 (S.D. Fla. 2008); *Rosa*, 262 F. Supp. 2d at 1366-68; *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 77 (Fla. 3d DCA 1997). Furthermore, misrepresentations relating to the breaching party's performance under a contract do not give rise to an independent cause of action, because such misrepresentations are interwoven and indistinct from the heart of the contractual agreement. *Topp, Inc.*, 513 F. Supp. 2d at 1348-49 (citing cases); *see also Royal Surplus Ins. Co. v. Coachman Indus., Inc.*, 184 F. App'x 894, 902 (11th Cir. 2006) (holding that Florida's economic loss rule barred

claims of negligence, breach of fiduciary duty, fraud, deceit, and misrepresentation that were based on "the same information that provided the basis for the breach of contract claim").

In the Amended Complaint, BCS repeats many of the allegations asserted previously in its Counterclaim against NAC. As the Court found in its February 5, 2008 Order which dismissed BCS' fraud claim, BCS does not raise an independent tort claim by merely alleging that NAC "fraudulently" failed to meet its obligations under the contract. (Case No. 07-1503, Doc. No. 39 at 6-8.) The same holds true for the identical allegations against Goble individually.[4]

Although BCS offers some new allegations in the Amended Complaint not pled previously in the Counterclaim, these allegations do not state a claim for an independent tort. First, BCS attempts to incorporate into its claim of fraud the fact that the Security and Exchange Commission is pursuing an action against NAC and Goble for violations of securities laws. (Case No. 07-1503, Doc. No. 89 at 19-20.) However, BCS has pled no injury traceable to these alleged securities laws violations. Secondly, BCS makes claims concerning Goble's motivations for entering into the contract in an effort to demonstrate his fraud. For example, BCS pleads, "Defendant Goble knew he was experiencing severe financial problems when he entered into the agreements with BCS and never intended to pay the full royalties due to BCS, but instead intended to steal BCS's proprietary software in order to ease its financial difficulties." (*Id.* at 20.) These allegations of motive do not,

---

[4] The economic loss rule usually is limited to parties in contractual privity; however, it has also been found to apply when a claimant who has contracted with a corporation brings otherwise barred tort claims against the individual corporate officers. *See Luigino's Int'l, Inc. v. Miller*, 311 F. App'x 289, 294 (11th Cir. 2009) ("We recognize that contractual privity may not be required when a tort action is barred against a corporation under the economic loss rule and its corporate employee is being sued for the same tortious conduct.") (citing *Vesta Constr. & Design, L.L.C. v. Lotspeich & Assocs., Inc.*, 974 So. 2d 1176, 1181 (Fla. 5th DCA 2008) and *Ben-Yishay, M.D.*, 553 F. Supp. 2d at 1370-71 as cases making this finding).

however, describe any *representations* made by Goble to BCS, nor do they establish how Goble's purported fraudulent activities are distinct from his conduct which allegedly breaches the promises and obligations set forth in the licensing agreements. Instead, the allegations of BCS offered to support its fraud claim demonstrate the overlap between this claim and the breach of contract claim:

> 16. Section 3.01 of the Original Agreement specifies that BCS would retain and reserve title to its software, components, files, and file structures in perpetuity. Under Section 3.02 of the Original Agreement, NAC agreed that it could not transfer or disclose BCS's software or trade secrets. Significantly, NAC, including Defendant, were also prohibited from copying, accessing, or reverse engineering the BCS original "Clipper" software code. Nothing in the First Amendment abrogated or amended the rights and responsibilities of NAC, including Defendant, to abide by the Original Agreement.

> * * *

> 18. BCS learned that, in September 2007, NAC, including Defendant Goble, has viewed, copied, reverse engineered and decompiled executable program files, expressly prohibited by and in violation of the Original Agreement. NAC was never permitted to access, copy, modify, utilize, sell, or make use of BCS's source code files. Defendant Goble was never permitted to view BCS's original source code, copy original BCS software, and copy BCS's source codes.

> * * *

> 27. NAC, including Defendant Goble, breached both the Original Agreement and First Amendment by decompiling and "reverse engineering" the Clipper software or the new BrokerTrak program without BCS's consent or supervision.

(*Id.* at 5, 7.)

BCS' description of the License Agreement and Amendment shows that these contracts expressly defined the ownership and proper use of BCS' source code. The conduct which BCS describes in its fraud claim as the "stealing" of its source code is covered by the contractual terms, and therefore there is a remedy in contract. In other words, "[BCS'] fraudulent misrepresentation claims assert that the misrepresentations consisted of the promises made in the agreement, and that

[BCS] entered into the Agreements based on those unfulfilled promises.  Therefore, [BCS'] claim against [Goble] for fraudulent misrepresentation must be dismissed because it is not an independent claim and is barred by the economic loss rule." *Ben-Yishay, M.D.*, 553 F. Supp. 2d at 1371.  BCS' allegations of fraud are "are interwoven and indistinct from the heart of the contractual agreement" and "inseparable from the essence of the parties' agreement"; therefore, "the economic loss rule applies and the parties are limited to pursuing their rights in contract."  *Hotels of Key Largo, Inc.*, 694 So.2d at 78.

### 4.  FDUTPA

FDUTPA broadly declares unlawful any "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices" committed "in the conduct of any trade or commerce."  § 501.204(1), Fla. Stat.  A claim for damages under FDUTPA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  *City First Mortgage Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006), *review denied*, 962 So. 2d 335 (Fla. 2007)).  As explained by Florida's Supreme Court, "[a]n unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (quotation marks omitted) (quoting *Samuels v. King Motor Co. of Ft. Lauderdale, Fla.*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001)).  "A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."  *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1364 (M.D. Fla.

2007) (quoting *Fla. Office of Attorney Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004)). "When addressing a deceptive or unfair trade practice claim, the issue is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Wyndham Int'l, Inc.*, 869 So. 2d at 598 (citing *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000)). As provided by Section 501.211(2) of the Florida Statutes, any "person" who has suffered a loss as a result of such practices may commence a private action for actual damages, attorneys' fees, and court costs. These remedies are "in addition to remedies otherwise available for the same conduct under state or local law." § 501.213(1), Fla. Stat.

In the Amended Complaint, BCS incorporates all prior paragraphs, 111 in total, into its sixth count alleging a violation of FDUTPA. (Case No. 07-1503, Doc. No. 89 at 27.) BCS then pleads as follows:

> 113. Defendant Goble wrongfully exercised control over BCS's propriety software, including BCS's original Clipper software, BCS's source codes, BCS's new BrokerTrak software system, and BCS's executable program files through fraud, misrepresentation, and through other unconscionable, deceptive and wrongful methods, as set forth above, without BCS's knowledge or consent. BCS owned, possessed and had a right to possess an interest in its propriety software, including BCS's original Clipper software, BCS's source codes, the new BrokerTrak system, and executable program files. The Original Agreement and First Amendment expressly require that the entirety of this software was to remain with BCS at all times. Defendant Goble wrongfully exercised dominion and control of BCS's software. BCS alleges that Defendant Goble took this action to retain a benefit for his dishonest conduct and to avoid paying BCS for the fair value of its software.

> 114. Defendant Goble, at all times engaged in acts that were immoral, unethical, oppressive, and unscrupulous.

> 115. Defendant Goble's actions, at all times offended established public policy in that their actions constituted theft, fraud, and misappropriation of BCS's proprietary property and in that their actions gave them a competitive advantage over competitors that did not resort to the same wrongful conduct.

116. At no time did BCS consent to the wrongful and intentional acts of Defendant Goble, as described herein.

117. As a proximate and direct result of the wrongful and intentional actions of Defendant Goble, BCS has been damaged in an amount to be proven at trial.

(*Id.* at 27-28.) These allegations offer only legal conclusions couched as factual allegations. Pursuant to the Supreme Court's holdings in *Iqbal*, 2009 WL 1361536, at *13, and *Twombly*, 550 U.S. at 555, they are unworthy of the presumption of truth and do not provide factual support for BCS' FDUTPA claim. BCS' reference to "unconscionable, deceptive and wrongful methods, as set forth above" does not specify the particular paragraphs containing the relevant facts and requires Goble, as well as this Court, to sift through the prior 111 paragraphs and speculate as to which facts BCS refers. This manner of pleading does not meet the notice requirements of Federal Rule of Civil Procedure 8(a)(2). There being no well-pled facts offered in support of this count, BCS' claim for violation of FDUTPA must be dismissed. BCS may replead this claim with supporting facts.

## Conclusion

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that:

1.     Defendants Bruce Blatman and Timothy J. Ward are **DISMISSED** from the case **WITH PREJUDICE**. The Motions to Dismiss by these two Defendants (Case No. 6:08-cv-1567-Orl-19KRS, Doc. No. 31, filed Oct. 20, 2008; Doc. No. 33, filed Oct. 23, 2008) are **DENIED AS MOOT**.

2.     The Motions to Dismiss by Defendant Richard L. Goble (Case No. 6:08-cv-1567-Orl-19KRS, Doc. No. 26, filed Oct. 1, 2008; Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 91, filed Apr. 28, 2009) are **GRANTED IN PART AND DENIED IN PART** as follows:

a. The Motions are **GRANTED** as to Count One of the Amended Complaint, Breach of Contract, **WITHOUT PREJUDICE** to pleading the claim with greater particularity.

b. The Motions are **DENIED** as to Count Two of the Amended Complaint, Conversion.

c. The Motions are **DENIED** as to Count Three of the Amended Complaint, Violation of the Lanham Act.

d. The Motions are **GRANTED** as to Count Four of the Amended Complaint, Fraud.

e. The Motions are **GRANTED** as to Count Five of the Amended Complaint, Declaratory Relief, **WITHOUT PREJUDICE** to pleading a more definite statement.

f. The Motions are **GRANTED** as to Count Six of the Amended Complaint, Violation of Florida's Deceptive and Unfair Trade Practices Act, **WITHOUT PREJUDICE** to pleading the claim with greater particularity.

3. The words "et al." and the plural form of "Defendants" are **ORDERED STRICKEN** from the style of the 08-1567 case in the Amended Complaint.

4. Plaintiff BCS has leave to file a Second Amended Complaint that comports with this Order within ten (10) days from the date of this Order; otherwise, the action will proceed against Goble on Counts Two and Three of the Amended Complaint. In addition, if BCS chooses to file a Second Amended Complaint, failure to correct

therein the defects identified in the Amended Complaint may result in dismissal of

the non-compliant claims with prejudice and without further notice.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on May 26, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:
Counsel of Record