UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**NORTH AMERICAN CLEARING, INC.,**

    **Plaintiff,**

-vs-                **Case No. 6:07-cv-1503-Orl-19KRS**

**BROKERAGE COMPUTER SYSTEMS, INC.,**

    **Defendant.**

_____

**BROKERAGE COMPUTER SYSTEMS, INC.,**

    **Plaintiff,**

-vs-                **Case No. 6:08-cv-1567-Orl-19KRS**

**RICHARD L. GOBLE,**

    **Defendant.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion to Dismiss Plaintiff's Second Amended Complaint by Defendant Richard L. Goble (Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 100, filed June 23, 2009); and

2. Opposition to Defendant Richard Goble's Motion to Dismiss Plaintiff's Second Amended Complaint by Plaintiff Brokerage Computer Systems, Inc. (Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 104, filed July 13, 2009).

**Background**

**I. Factual Allegations**

From the allegations of the Second Amended Complaint, Plaintiff Broker Computer Systems, Inc. ("BCS") is a California corporation in the business of creating, designing, providing, and maintaining computer securities accounting systems for brokers. (Case No. 6:07-cv-1503-Orl-19KRS,[1] Doc. No. 98 ¶ 3, filed June 5, 2009.) Defendant Richard Goble is the founder of the stock brokerage firm North American Clearing, Inc. ("NAC"). (*Id.* ¶¶ 4, 12.)

BCS alleges that it and NAC entered into a Software License Agreement ("Original Agreement") under which BCS licensed its proprietary accounting software to NAC for four years. (*Id.* ¶ 12.) The Original Agreement prohibited NAC and its officers, including Defendant Goble, from using, modifying, or disclosing the software. (*Id.* ¶ 17.) BCS and NAC then amended the Original Agreement ("Amended Agreement") and agreed to work together to convert the BrokerTrak computer program from the Clipper programming language to the C++ programming language. (*Id.* ¶ 14; ex. 2 at 1.) All provisions of the Original Agreement remained in effect. (*Id.* ¶ 17.) BCS was to own the new C++ version of BrokerTrak, oversee its development, and manage NAC personnel that developed BrokerTrak. (*Id.* ¶¶ 14, 15.) Both the Original Agreement and the Amended Agreement were signed by Defendant Goble on behalf of NAC. (*Id.* ¶¶ 12, 14.)

BCS alleges that "NAC, including Defendant Goble,"[2] viewed, copied, reverse-engineered, and decompiled program files in breach of the Amended Agreement. (*Id.* ¶ 20.) BCS subsequently

---

[1] This case will be referred to in the text of this Order as "the 07-1503 case" and will be cited as "Case No. 07-1503."

[2] The Court interprets these words to allege conduct by both NAC and Defendant Goble, individually. Fed. R. Civ. P. 8(e).

terminated NAC's license to use BrokerTrak. (*Id.* ¶ 23.) NAC and Defendant Goble allegedly attempted to hide their copying, decompiling, and reverse-engineering of BrokerTrak by sending the original source code to India to be decompiled and reverse-engineered, disabling the time lock embedded in the software, and changing BrokerTrak's name to BOS. (Case No. 07-1503, Doc. No. 98 ¶¶ 87-93.) BCS further alleges that Goble took these actions without telling BCS in order to avoid paying BCS additional royalties, to avoid purchasing alternative software, to undercut BCS's competitors, and to gain a personal advantage over BCS and others. (*Id.* ¶¶ 94, 96.)

BCS claims that Goble is the alter ego of NAC based upon allegations that the actions of NAC and of Goble were interchangeable, that Goble's personal affairs were confused with NAC's business affairs, that Goble commingled his personal assets with NAC's assets, that Goble used NAC assets for personal expenses, and that NAC lacked corporate formalities. (*Id.* ¶¶ 6-10.)

BCS further maintains that NAC was a device or sham used by Goble to mislead future creditors, perpetuate fraud, and avoid personal liability. (*Id.* ¶ 35.) BCS cites the Complaint filed by the SEC against NAC and Defendant Goble as evidence of fraud. (*Id.* ¶ 31.) BCS also alleges that "Goble engaged in illegal activities, including the misuse of his customers' funds" in order to hide his and NAC's financial problems, to pay for daily business operations, and to hide his scheme to steal BCS's source code. (*Id.* ¶ 32.) Regarding the business relationship between BCS and NAC, BCS alleges that Goble never intended to pay the royalties due under the Amended Agreement but instead intended to steal BCS's software for personal profit. (*Id.* ¶ 33.) Finally, BCS alleges that Defendant Goble intentionally acted through NAC, rather than as an individual, to avoid individual liability for his actions. (*Id.* ¶ 35.)

## II. Procedural History

BCS was originally a defendant in the 07-1503 case brought by NAC alleging breach of contract and seeking declaratory relief. (Case No. 07-1503, Doc. No. 1, filed Sept. 21, 2007.) BCS answered the Complaint and filed a Counterclaim asserting nine claims: (1) breach of contract; (2) intentional misrepresentation / fraud; (3) negligent misrepresentation; (4) breach of fiduciary duty; (5) conversion; (6) unjust enrichment; (7) violation of the Lanham Act, 15 U.S.C. § 1125 (2006); (8) permanent injunctive relief; and (9) declaratory relief. (Case No. 07-1503, Doc. No. 7, filed Nov. 16, 2007.) Upon NAC's Motion, the Court dismissed BCS' second, third, and fourth claims under Florida's economic loss rule, dismissed the sixth claim as a quasi-contract claim barred by the existence of an actual contract, and struck the designation of claim eight as a separate cause of action, construing it as a prayer for relief. (Case No. 07-1503, Doc. No. 39.) With the Court's leave, BCS filed an Amended Counterclaim against NAC. (Case No. 07-1503, Doc. No. 40, filed Feb. 15, 2008.)

After the close of discovery and the dispositive motions deadline, Notice was filed in the record informing the Court that NAC was the subject of a bankruptcy liquidation proceeding. (Case No. 07-1503, Doc. No. 59, filed Aug. 25, 2008.) Therefore, the 07-1503 case was stayed pending resolution of the bankruptcy proceedings. (Case No. 07-1503, Doc. No. 60, filed Sept. 3, 2008.) BCS then filed a separate action against the individual corporate officers of NAC in case number 6:08-cv-1567-Orl-19KRS.[3] The two actions were later consolidated, although the claims against NAC remained stayed. (Case No. 07-1503, Doc. No. 63, filed Oct. 24, 2008.)

---

[3] The second-filed case will be referred to as "the 08-1567 case" in the text of this Order and cited as "Case No. 08-1567."

Defendants Richard L. Goble, Bruce B. Blatman, and Timothy J. Ward, the individual corporate officers of NAC, filed Motions to Dismiss the Complaint of BCS. (Case No. 08-1567, Doc. Nos. 26, 31, 33.) BCS responded in opposition to these Motions. (Case No. 08-1567, Doc. No. 30; Case No. 07-1503, Doc. Nos. 65-66.) Blatman and Ward then each filed "Joint Stipulations" in the record purporting to dismiss these two Defendants from the case with prejudice with the consent of BCS. (Case No. 08-1567, Doc. No. 42; Case No. 07-1503, Doc. No. 81.)

After the filing of the Joint Stipulations and with leave of Court, BCS filed an Amended Complaint which asserted six claims Goble: (1) breach of contract; (2) conversion; (3) violation of the Lanham Act, 15 U.S.C. § 1125; (4) fraud; (5) declaratory relief; and (6) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.204(1), Fla. Stat. (2007). (Case No. 07-1503, Doc. No. 89.) Goble filed a corresponding Motion to Dismiss incorporating the arguments raised in his previously-filed Motion. (Case No. 07-1503, Doc. No. 91.) In response, BCS filed an opposition to Goble's second Motion to Dismiss. (Case No. 07-1503, Doc. No. 94.) The Court then entered an Order addressing all of the outstanding Motions to Dismiss by Defendants Goble, Blatman, and Ward. (Case No. 08-1567, Doc. Nos. 26, 31, 33; Case No. 07-1503, Doc. No. 91.) The Court dismissed with prejudice all claims by BCS against Defendants Blatman and Ward, denied Goble's Motion to Dismiss with respect to BCS's claims of conversion and violation of the Lanham Act, dismissed with prejudice BCS's claim against Goble for fraud, and dismissed without prejudice BCS's claims against Goble for breach of contract, declaratory relief, and violation of FDUTPA. (Case No. 07-1503, Doc. No. 95 at 25-26, filed May 27, 2009.)

BCS timely filed a Second Amended Complaint asserting against Defendant Goble four causes of action: (1) breach of contract; (2) conversion; (3) false designation of origin in violation

of the Lanham Act; and (4) violation of FDUTPA. (Case No. 07-1503, Doc. No. 98, filed June 5, 2009.)  Goble has filed a Motion to Dismiss, arguing that the Second Amended Complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted.  (Case No. 07-1503, Doc. No. 100 at 3.)  In response, BCS filed an opposition to Goble's Motion to Dismiss. (Case No. 07-1503, Doc. No. 94.)

**Standard of Review**

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323.  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing

*Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

## Analysis

To sufficiently plead a claim, BCS must assert facts which plausibly establish each element of the claim. *See Iqbal*, 129 S. Ct. at 1949 ( "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Twombly*, 550 U.S. at 570). Thus, the facts alleged in support of each cause of action must be compared with the elements of that cause of action.

**I.      Breach of Contract**

The Court previously ruled that Defendant Goble is not liable under the allegations of the Amended Agreement merely because of his signature on the documents or his position as a corporate officer, but Goble may be liable if BCS demonstrates that NAC's corporate veil should be pierced. (Case No. 07-1503, Doc. No. 95 at 12.) This Court also stated that piercing the corporate veil requires two elements: first, "the corporation is in actuality the alter ego of the stockholders," and second, "it was organized or after organization was employed by the stockholders

for fraudulent or misleading purposes." (*Id.* at 13) (quoting *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984).) However, Defendant Goble claims that piercing the corporate veil also requires injury to the plaintiff caused by the defendant's improper use of the corporate form. (Doc. No. 100 at 7); *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468-69 (citing *Sykes*, 450 So. 2d 1114). Some Florida District Courts of Appeal have incorporated causation and damages into the standard for piercing the corporate veil, although the Supreme Court of Florida has not yet done so. *Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. 3d DCA 2008); *Seminole Boatyard, Inc. v. Christoph*, 715 So.2d 987, 990 (Fla. 4th DCA 1998) (citing *Hillsborough Holdings*, 166 B.R. at 468-69); *see also U-Haul Intern., Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1043 (9th Cir. 1986) (reasoning that the alter ego theory under *Sykes* requires fraudulent or misleading conduct to be directed at the plaintiff); *Solomon v. Betras Plastics, Inc.*, 550 So.2d 1182, 1184-85 (Fla. 5th DCA 1989) (Cobb, J., dissenting) ("[T]he demonstrated improper conduct must be the proximate cause of the alleged loss."). Notably, no Florida District Court of Appeals has rejected the incorporation of causation and damages into the standard for piercing the corporate veil.

    The Court must incorporate the elements of causation and damages into the standard for piercing the corporate veil on the imprimatur of the Florida District Courts of Appeal absent persuasive evidence that the Supreme Court of Florida would do otherwise. *See Bravo v. U.S.*, ___ F.3d ___, 2009 WL 2357016, at *2 (11th Cir. Aug. 3, 2009) (directing the Court to "follow an intermediate state appellate court 'unless there is persuasive evidence that the highest state court would rule otherwise.'") (quoting *King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 158 (1948)). Finding no evidence that the Florida Supreme Court would reject the incorporation of causation and damages into the standard for piercing the corporate veil, BCS must

plead facts plausibly establishing that (1) Goble is the alter ego of NAC; and (2) NAC was organized or used by Mr. Goble for improper purposes that caused injury to BCS. *Iqbal*, 129 S. Ct. at 1949; *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468-69.

**A. Alter Ego**

"Under the basic alter ego theory (confusion of identities), the personal affairs of the shareholder become confused with the business affairs of the corporation. Individual liability under this theory rests in part on the fact that a shareholder has taken it upon himself to disregard the corporate entity." *Solomon*, 550 So. 2d at 1184 (Cobb, J., dissenting) (footnote omitted). So to plausibly establish that Defendant Goble is the alter ego of NAC, Plaintiff BCS must plead facts which permit a reasonable inference that Goble took action to confuse his personal affairs with NAC's affairs. *See Iqbal*, 129 S. Ct. at 1949 (instructing courts to draw reasonable inferences in the context of the facts pled).

BCS alleges that Goble commingled his personal funds with NAC's funds, regularly charged between $10,000 and $30,000 per month in personal expenses on a company credit card, and used NAC's funds to purchase home improvements, a personal car, family vacations and cruises, basketball tickets for personal use, and private school tuition for his children. (Case No. 07-1503, Doc. No. 98 ¶¶ 8, 10.) These allegations permit a reasonable inference that Goble and NAC were financially interchangeable and that Goble took it upon himself to disregard the corporate entity.

BCS also alleges facts describing how Defendant Goble had sole control of BCS. (*See* Case No. 07-1503, Doc. No. 98 ¶ 6 ("NAC was not managed by directors or managers, but by Goble personally. . . . [A]ll actions were made solely at the choice and direction of Goble. . . . Goble micromanaged the company and the company's employees . . . . Goble was constantly present at the

company . . . . Every decision had to be run by Goble."); *id.* ¶ 7 ("Goble used NAC for his personal designs and objectives. Goble was solely in charge of NAC's actions, and Goble used NAC merely as a vehicle though which Goble exercised his individual will."); *id.* 9 (alleging how NAC lacked corporate formalities).) These facts permit a reasonable inference that Goble dominated and controlled NAC such that his personal actions were confused with corporate actions. Based on these context-specific inferences, BCS's claims plausibly allege that Goble was NAC's alter ego.

### B. Improper Conduct by Goble Causing Damage to BCS

Although the facts pled plausibly allege that Defendant Goble is NAC's alter ego, "the corporate veil may not be pierced absent a showing of improper conduct" by Goble that damaged BCS. *Sykes*, 450 So. 2d at 1121; *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468-69. In defining improper conduct for purposes of piercing the corporate veil, the Eleventh Circuit quoted Florida's Supreme Court, stating, "[i]mproper conduct is present only in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose." *Johnson Enters. of Jacksonville, Inc.*, 162 F.3d at 1320 (quotation marks and alterations omitted) (quoting *Sykes*, 450 So. 2d at 1117). Conduct may also be deemed improper "where the corporation was employed . . . for fraudulent or misleading purposes, was organized or used to mislead creditors or to perpetrate a fraud upon them, or to evade existing personal liability." *Steinhardt v. Banks*, 511 So. 2d 336, 339 (Fla. 4th DCA 1987) (quoting *Tiernan v. Sheldon*, 191 So. 2d 87, 89 (Fla. 4th DCA 1966)). As further explained by the Florida Supreme Court:

> The rule that [the] corporate entity will be disregarded where [the] name of [a] corporation is used by [the] stockholders in transactions to mislead creditors or perpetrate fraud on them is but a logical sequence of the principle that a corporation cannot be formed for the purpose of accomplishing fraud or [some] other illegal act,

under the guise of [the] fiction that the corporation is [a] legal entity separate and distinct from its members, since when fraud or [an] illegal act is attempted, [that] fiction will be disregarded by the court and the acts of the real parties dealt with as though no corporation had been formed.

*Sykes*, 450 So. 2d at 1117 (quoting *Mayer v. Eastwood-Smith & Co.*, 164 So. 684, 687 (Fla. 1935)).

However, not all wrongful conduct constitutes improper conduct for purposes of piercing the corporate veil. For instance, the fact that corporate formalities were not observed, that a corporation was a vehicle for the personal interests of the shareholder, that it lacked equity capital, and that its affairs were dominated by another did not constitute improper conduct for purposes of piercing the corporate veil. *Barkett v. Hardy*, 571 So.2d 13, 14 (Fla. 2d DCA 1990). Thus, Plaintiff BCS's allegations that Defendant Goble kept NAC from observing corporate formalities, that NAC served only Goble's personal interests, and that Goble dominated NAC cannot support a finding of improper conduct. (Case No. 07-1503, Doc. No. 98 ¶¶ 6, 7, 9.)

BCS also alleges that Defendant Goble misused customers' funds in order to hide his and NAC's financial problems, to pay for daily business operations, and to hide his scheme to steal BCS's computer code. (*Id.* ¶ 32.) Even if Defendant Goble's misuse of customers' funds is improper, it does not plausibly support piercing NAC's corporate veil because it does not concern improper use of the corporate form. *Sykes*, 450 So. 2d at 1117. In contrast, BCS's allegations that Goble combined NAC with "another company owned by Goble" for the purpose of side-stepping an SEC investigation and that Goble diverted assets from NAC are plausibly improper uses of the corporate form. (Case No. 07-1503, Doc. No. 98 ¶¶ 9, 10, 34.) *See Iqbal*, 129 S. Ct. at 1949-50 (directing courts to make reasonable inferences in the context of the facts pled). However, these allegations also do not support piercing NAC's corporate veil because BCS does not allege that such improper conduct damaged it.

BCS then alleges that Goble did not intend to pay the royalties due under the Agreements when he signed them but instead intended to steal BCS's software "in order to ease Goble's personal financial difficulties." (*Id.* ¶ 33.) BCS further alleges that Defendant Goble intentionally acted through NAC, rather than as an individual, to avoid individual liability for his conduct. (*Id.* ¶ 35.) These allegations plausibly establish Goble's improper use of NAC's corporate form because he allegedly signed the agreements in his corporate capacity with the intent to steal BCS's software for personal profit and to avoid personal liability. In addition, these allegations plausibly establish that Goble's improper use of the corporate form caused harm to BCS because it can be reasonably inferred that Goble signed the agreements never intending for NAC to uphold its contractual obligations to BCS. *See Iqbal*, 129 S. Ct. at 1949-50 (directing courts to make reasonable inferences in the context of the facts pled). Thus, BCS's allegations plausibly establish the elements required to pierce NAC's veil.

## II. Conversion

A claim for conversion has three elements: (1) act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein. *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1294 (S.D. Fla. 2001). BCS must plead facts plausibly establishing each of these elements. *Iqbal*, 129 S. Ct. at 1949. BCS alleges that "NAC, through individuals working for and with authority to bind NAC, including Defendant Goble" committed certain acts constituting conversion. (Case No. 07-1503, Doc. No. 98 ¶¶ 63-69; *see also id.* ¶ 64 ("NAC, through individuals working for and with authority to bind NAC, including Defendant Goble" converted to *its* own use [BCS's software].") (emphasis added); *id.* ¶ 65 (alleging that NAC committed certain acts for *its* own benefit) (emphasis added).) These allegations plausibly

suggest that NAC, not Defendant Goble himself, committed acts of conversion. However, BCS still states a claim for conversion against Defendant Goble by incorporating by reference its allegations that NAC's corporate veil should be pierced. (*Id.* ¶ 62.) Thus, Defendant Goble may be liable for conversion if BCS proves that NAC committed conversion and that NAC's corporate veil should be pierced.

**III.     Lanham Act**

BCS asserts a claim under 11 U.S.C. § 1125(a) for false designation of origin, which prohibits, *inter alia*, reverse passing off. *Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc.*, 457 F.3d 1269, 1276-77 (Fed. Cir. 2006). Reverse passing off occurs when a producer "misrepresents someone else's goods or services as his own." *Id.* at 1277 (quoting *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1, 30 (2003)). Reverse passing off consists of four elements: (1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin. *Id.* BCS must plead facts plausibly establishing each of these elements; threadbare recitals of the elements of the cause of action will not suffice.[4] *Iqbal*, 129 S. Ct. at 1949.

First, the term "BCS's proprietary software," used throughout BCS's allegation of reverse passing off, plausibly alleges that the software originated with BCS because proprietary software is defined as "software that cannot be used, redistributed, or modified without permission," and the

---

[4] Threadbare recitals of the elements of a cause of action against NAC rather than Defendant Goble will not suffice. (*See, e.g.*, Case No. 07-1503, Doc. No. 98 ¶ 76 ("The true facts are that the proprietary software originated with BCS, but NAC has falsely designated it as their own, which has caused confusion and harm to BCS.").

use of a possessive adjective permits an inference that BCS owns such software. Black's Law Dictionary 1339 (9th ed. 2009); (*see, e.g.*, Case No. 07-1503, Doc. No. 98 ¶¶ 73-74, 76-78). Second, BCS's allegation that Defendant Goble changed BrokerTrak's name to BOS plausibly alleges that Defendant Goble falsely designated the origin of the new version of BrokerTrak. (Case No. 07-1503, Doc. No. 98 ¶ 72.) Third, BCS alleges that NAC and Defendant Goble obtained BCS's software and then marketed the software in interstate commerce "as if it were its own." (Case No. 07-1503, Doc. No. 98 ¶¶ 75-76). The phrase "as if it were its own" permits a reasonable inference that Goble marketed the software as though it NAC owned it[5] and plausibly establishes that Defendant Goble caused consumer confusion.

Fourth, Plaintiff BCS must plead facts plausibly establishing that it was harmed by Defendant Goble's conduct. BCS frequently alleges that it suffered "harm," "damage," and "injuries." (Case No. 07-1503, Doc. No. 98 ¶¶ 76, 78, 79, 83). Although a precise accounting of damages need not be pled,[6] BCS's threadbare allegations of harm do not plausibly establish that it was damaged by Defendant Goble's conduct. *Iqbal*, 129 S. Ct. at 1949. However, BCS also alleges that Defendant Goble obtained BCS's proprietary software without its permission and in violation of the Amended Agreement. (Case No. 07-1503, Doc. No. 98 ¶¶ 75, 78). These allegations plausibly establish that BCS was damaged by Defendant Goble's actions. Thus, BCS has sufficiently pled its claim against Defendant Goble under the Lanham Act.

---

[5] Because Defendant Goble is a "he," NAC is the only possible antecedent of "its" in this context.

[6] BCS asserts that "[i]t is . . . impossible for BCS to determine the amount of monetary damages from NAC's actions." (Case No. 07-1503, Doc. No. 98 ¶ 83). However, the relevant inquiry is whether Defendant Goble's actions, not NAC's actions, caused BCS harm. *See supra* note 4.

## IV. FDUTPA

A claim for damages under FDUTPA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortgage Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006), *review denied*, 962 So. 2d 335 (Fla. 2007)). BCS must plead facts plausibly establishing each of these elements. *Iqbal*, 129 S. Ct. at 1949.

The Florida's Supreme Court has defined an unfair or deceptive practice as "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (quotation marks omitted) (quoting *Samuels v. King Motor Co. of Ft. Lauderdale, Fla.*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001)). "A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) (quoting *Fla. Office of Attorney Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004)).

BCS alleges that NAC was behind in its efforts to create the new BrokerTrak software and rather than negotiate an extension of the Amended Agreement, Goble terminated BCS from working on the new BrokerTrak software, sent the original source code to India to be decompiled and reverse-engineered without BCS's knowledge, disabled the time lock embedded in the original BCS software, and changed BrokerTrak's name to BOS (Case No. 07-1503, Doc. No. 98 ¶¶ 87-93). BCS further alleges that Goble took these actions without notifying BCS in order to avoid paying it

additional royalties, to avoid purchasing alternative software, to undercut BCS's competitors, and to gain a personal advantage over BCS and others. (*Id.* ¶¶ 94, 96.) These allegations of theft, dishonesty, and misappropriation by Defendant Goble plausibly establish deceptive and unfair trade practices. In addition, BCS's allegation that Defendant Goble's conduct has prevented BCS from taking full advantage of its software and from obtaining a fair value for the use of its software plausibly establishes the final two elements of causation and damages. (*Id.* ¶ 99.) Thus, BCS has sufficiently pled its claim against Defendant Goble under FDUTPA.

## Conclusion

Based on the foregoing, the Motion to Dismiss Plaintiff's Second Amended Complaint by Defendant Richard L. Goble (Case No. 07-1503, Doc. No. 100) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on September 10, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record