NORTH AMERICAN CLEARING, INC.,

        Plaintiff,

-vs-                              Case No.  6:07-cv-1503-Orl-19KRS

BROKERAGE COMPUTER SYSTEMS, INC.,

        Defendant.

_____

BROKERAGE COMPUTER SYSTEMS, INC.,

        Plaintiff,

-vs-                              Case No.  6:08-cv-1567-Orl-19KRS

RICHARD L. GOBLE,

        Defendant.

_____

# ORDER

This case comes before the Court on the following:

1.     Motion for Summary Judgment by Defendant Richard L. Goble (Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 107, filed July 24, 2009);

2.     Opposition to Defendant Richard Goble's Motion for Summary Judgment by Plaintiff Brokerage Computer Systems, Inc. (Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 122, filed Aug. 25, 2009);

3.      Objections to the Affidavit of Richard Goble Offered in Support of Summary Judgment by Plaintiff Brokerage Computer Systems, Inc. (Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 123, filed Aug. 25, 2009);

4.      Objections to Exhibits Attached to Defendant's Appendix of Exhibits in Support of Summary Judgment by Plaintiff Brokerage Computer Systems, Inc. (Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 124, filed Aug. 25, 2009);

5.      Response in Opposition to Plaintiffs's Objections to Exhibits by Defendant Richard L. Goble (Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 128, filed Aug. 31, 2009);

6.      Response in Opposition to Plaintiff's Objections to the Affidavit of Richard Goble Offered in Support of Summary Judgment by Defendant Richard L. Goble (Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 129, filed Aug. 31, 2009);

7.      Renewed Motion to Strike Portions of the Appendix of Exhibits in Support of BCS's Opposition to Motion for Summary Judgment by Defendant Richard R. Goble (Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 146, filed Sept. 16, 2009);

8.      Opposition to Defendant's Renewed Motion to Strike Portions of the Appendix of Exhibits in Support of BCS's Opposition to Motion for Summary Judgment by Plaintiff Brokerage Computer Systems, Inc. (Case No. 6:07-cv-1503-Orl-19KRS, Doc. No. 150, filed Sept. 29, 2009).

# Background

## I.    Procedural History

Plaintiff Broker Computer Systems, Inc. ("BCS") was originally a defendant in Case No. 6:07-cv-1503-Orl-19KRS[1] brought by North American Clearing, Inc. ("NAC") which asserted claims for breach of contract and declaratory relief.  (Case No. 07-1503, Doc. No. 1, filed Sept. 21, 2007.)  BCS answered the Complaint and filed a Counterclaim asserting nine claims: (1) breach of contract; (2) intentional misrepresentation / fraud; (3) negligent misrepresentation; (4) breach of fiduciary duty; (5) conversion; (6) unjust enrichment; (7) violation of the Lanham Act, 15 U.S.C. § 1125 (2006); (8) permanent injunctive relief; and (9) declaratory relief.  (Case No. 07-1503, Doc. No. 7, filed Nov. 16, 2007.)  Upon NAC's Motion, the Court dismissed BCS' second, third, and fourth claims under Florida's economic loss rule, dismissed the sixth claim as a quasi-contract claim barred by the existence of an actual contract, and struck the designation of claim eight as a separate cause of action, instead construing it as a prayer for relief.  (Case No. 07-1503, Doc. No. 39.)  With the Court's leave, BCS filed an Amended Counterclaim against NAC.  (Case No. 07-1503, Doc. No. 40, filed Feb. 15, 2008.)

After the close of discovery and the dispositive motions deadline, notice was filed in the record informing the Court that NAC was the subject of a bankruptcy liquidation proceeding.  (Case No. 07-1503, Doc. No. 59, filed Aug. 25, 2008.)  Therefore, the 07-1503 case was stayed pending resolution of the bankruptcy proceedings.  (Case No. 07-1503, Doc. No. 60, filed Sept. 3, 2008.)  BCS then filed a separate action against the individual corporate officers of NAC in case number

---

[1]  This case will be referred to in the text of this Order as "the 07-1503 case" and will be cited as "Case No. 07-1503."

6:08-cv-1567-Orl-19KRS.[2]  The two actions were later consolidated, although the claims against NAC remained stayed.  (Case No. 07-1503, Doc. No. 63, filed Oct. 24, 2008.)

Defendants Richard L. Goble, Bruce B. Blatman, and Timothy J. Ward, the individual corporate officers of NAC, filed Motions to Dismiss the Complaint of BCS.  (Case No. 08-1567, Doc. Nos. 26, 31, 33.)  BCS responded in opposition to these Motions.  (Case No. 08-1567, Doc. No. 30; Case No. 07-1503, Doc. Nos. 65-66.)  Blatman and Ward then each filed "Joint Stipulations" in the record which purported to dismiss them from the case with prejudice with the consent of BCS. (Case No. 08-1567, Doc. No. 42; Case No. 07-1503, Doc. No. 81.)

After the filing of the Joint Stipulations and with leave of Court, BCS filed an Amended Complaint which asserted six claims against Goble: (1) breach of contract; (2) conversion; (3) violation of the Lanham Act, 15 U.S.C. § 1125; (4) fraud; (5) declaratory relief; and (6) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.204(1), Fla. Stat. (2007). (Case No. 07-1503, Doc. No. 89.)  Goble filed a corresponding Motion to Dismiss which incorporated the arguments raised in his previously-filed Motion.  (Case No. 07-1503, Doc. No. 91.) In response, BCS filed an opposition to Goble's second Motion to Dismiss.  (Case No. 07-1503, Doc. No. 94.)  The Court then entered an Order addressing all of the outstanding Motions to Dismiss filed by Defendants Goble, Blatman, and Ward.  (Case No. 08-1567, Doc. Nos. 26, 31, 33; Case No. 07-1503, Doc. No. 91.)  The Court dismissed with prejudice all claims by BCS against Defendants Blatman and Ward, denied Goble's Motion to Dismiss with respect to BCS's claims of conversion and violation of the Lanham Act, dismissed with prejudice BCS's claim against Goble for fraud, and

---

[2] The second-filed case will be referred to as "the 08-1567 case" in the text of this Order and cited as "Case No. 08-1567."

dismissed without prejudice BCS's claims against Goble for breach of contract, declaratory relief, and violation of FDUTPA. (Case No. 07-1503, Doc. No. 95 at 25-26, filed May 27, 2009.)

BCS timely filed a Second Amended Complaint which asserted against Defendant Goble four causes of action: (1) breach of contract; (2) conversion; (3) false designation of origin in violation of the Lanham Act; and (4) violation of FDUTPA. (Case No. 07-1503, Doc. No. 98, filed June 5, 2009.) Goble filed a Motion to Dismiss, arguing that the Second Amended Complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted. (Case No. 07-1503, Doc. No. 100 at 3.) In response, BCS filed an opposition to Goble's Motion to Dismiss. (Case No. 07-1503, Doc. No. 94.) The Court denied Goble's Motion to Dismiss. (Case No. 07-1503, Doc. No. 141, filed Sept. 11, 2009.)

Defendant Goble filed a Motion for Summary Judgment, and BCS responded in opposition and filed separate objections to Goble's supporting affidavit and exhibits. (Case No. 07-1503, Doc. Nos. 107, 122, 123, 124.) Goble filed responses to BCS's objections to his affidavit and exhibits. (Case No. 07-1503, Doc. Nos. 128, 129.) Goble also moved to strike portions of the exhibits filed by BCS in opposition to his Motion for Summary Judgment. (Case No. 07-1503, Doc. No. 146.) BCS filed a response to Goble's Motion to Strike. (Case No. 07-1503, Doc. No. 150.)

## II. Plaintiffs' Contentions

Plaintiff Broker Computer Systems, Inc. ("BCS") is a California corporation in the business of creating, designing, providing, and maintaining computer securities accounting systems for securities broker-dealers. (Case No. 07-1503, Doc. No. 125-1 at 2, filed June 5, 2009.) BCS modifies the source code of its proprietary accounting software to fit each of its client's needs. (*Id.*) Art Prager is BCS's president and owner. (*Id.* at 1.)

Defendant Richard Goble is the founder of the stock brokerage firm North American Clearing, Inc. ("NAC"). (*Id.* at 2; Case No. 07-1503, Doc. No. 125-4 at 20-21.) BCS and NAC entered into a Software License Agreement ("Original Agreement") on February 1, 2004, under which BCS licensed its proprietary accounting software to NAC until January 31, 2008. (Case No. 07-1503, Doc. No. 125-1 at 2.) The Original Agreement prohibited NAC and its officers, including Defendant Goble, from using, modifying, disclosing, copying, transferring, or reverse-engineering the software. (*Id.* at 3-4; Case No. 07-1503, Doc. No. 98-2 at 6.) BCS and NAC then amended the Original Agreement ("Amended Agreement") on June 10, 2004, and agreed to work together to convert the BrokerTrak computer program, a component of BCS's proprietary software, from the Clipper programming language to the C++ programming language. (Case No. 07-1503, Doc. No. 125-1 at 3; Case No. 07-1503, Doc. No. 98-3 at 2.) All provisions of the Original Agreement, including the term of the contract, remained in effect. (Case No. 07-1503, Doc. No. 125-1 at 5.) Both the Original Agreement and the Amended Agreement were signed by Defendant Goble on behalf of NAC. (Case No. 07-1503, Doc. Nos. 125-2, 125-3.)

Under the Amended Agreement, BCS was to own the new C++ version of BrokerTrak, oversee its development, and manage NAC personnel who developed BrokerTrak. (Case No. 07-1503, Doc. No. 125-1 at 3-4.) None of NAC's responsibilities under the Amended Agreement required it to access the source code of BCS's proprietary accounting software. (*Id.* at 6.) However, BCS provided NAC with portions of its source code to resolve a regulatory issue known as SAS70, to resolve one specific debugging issue, and to save time for the programming of standard functions and features. (*Id.* at 7-11.) In each case, BCS provided source code to facilitate NAC's ongoing use of the original BCS software, not to assist NAC with the coding of the new C++ version of

BrokerTrak. (*Id.* at 6, 11.) In addition, NAC was prohibited from using the source code for any other purposes. (*Id.* at 7, 9.) Overall, BCS provided NAC with only 1,500 of the 300,000 lines of its source code. (*Id.* at 9-10.)

According to Art Prager, Defendant Goble ordered NAC to decompile BCS's proprietary software and copy the decompiled software into the new C++ version of BrokerTrak in order to complete the BrokerTrak C++ conversion project by January 31, 2008. (*Id.* at 5-6, 10.) Prager further maintains that NAC and Defendant Goble attempted to hide their actions by sending the software to India to be decompiled. (*Id.* at 10-11.) When BCS learned that its software had been decompiled, BCS terminated NAC's software license under the Amended Agreement. (*Id.* at 5.)

BCS claims that Goble is the alter ego of NAC and that NAC's corporate veil should be pierced to hold Goble personally liable for NAC's actions. (Case No. 07-1503, Doc. No. 98 at 2-4.) Timothy Ward, the former chief financial officer of NAC, averred that Goble was the sole shareholder of NAC, that Goble made all final decisions for NAC, that NAC held no board of directors meetings, and that Goble extracted capital from NAC in order to purchase tile for G&G Holdings, another company owned by Goble. (Case No. 07-1503, Doc. No. 125-13 at 1-2.) Defendant Goble admitted that NAC paid for tile installed in his home, other home improvements, and his personal automobile. (Case No. 07-1503, Doc. No. 125-4 at 44-45.) Defendant Goble also admitted that NAC never held shareholders meetings and that he made personal charges, including private school tuition and family vacations, to NAC's credit card as part of his compensation package. (*Id.* at 125-28).

BCS further maintains that NAC was a device or sham used by Goble to mislead future creditors, perpetuate fraud, and avoid personal liability. (Case No. 07-1503, Doc. No. 98 at 9.) BCS

cites the Complaint filed by the SEC against NAC and Defendant Goble as evidence that NAC was experiencing financial difficulties. (Case No. 07-1503, Doc. 125-9 at 4.) Defendant Goble testified that subsequent to his meeting with Prager in July 2007, he believed that BCS planned to extort a much higher fee from NAC to renew its license of BCS's software beyond January 31, 2008, because NAC was dependent on BCS's software and would have no ability to negotiate. (Case No. 07-1503, Doc. No. 108-1 at 5-6; Doc. No. 122 at 6.) Thus, Goble allegedly had BCS's proprietary software decompiled so that NAC could save money by completing the BrokerTrak C++ conversion project by January 31, 2008. (Case No. 07-1503, Doc. No. 122 at 6-7; Doc. No. 125-6 at 5; Doc. No. 125-1 at 11.) BCS claims that because NAC's assets are Goble's assets, Goble decompiled BCS's software for his own financial benefit and sought to hide behind the corporate structure of NAC. (Case. No. 07-1503, Doc. No. 122 at 7.)

## Standard of Review

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

## Analysis

### I.      Claims of Breach of Contract and Conversion Against Defendant Goble

The Court previously ruled that Defendant Goble is not liable for any alleged breaches of the Amended Agreement merely because of his signature on the documents or his position as a corporate officer, but Goble may be liable if BCS demonstrates that NAC's corporate veil should be pierced. (Case No. 07-1503, Doc. No. 95 at 12.) Similarly, this Court ruled that Defendant Goble may be liable for conversion if BCS proves that NAC committed conversion and that NAC's

corporate veil should be pierced.  (Case No. 07-1503, Doc. No. 141 at 13.)  Thus, it is appropriate to first consider the issue of piercing NAC's corporate veil.

**A.  Standard for Piercing the Corporate Veil**

Piercing the corporate veil in Florida traditionally requires two elements: first, "the corporation is in actuality the alter ego of the stockholders," and second, "it was organized or after organization was employed by the stockholders for fraudulent or misleading purposes." *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984).  As previously discussed by this Court (Case No. 07-1503, Doc. No. 141 at 8-9), the Florida Courts of Appeal tend to incorporate the elements of causation and damages into the standard for piercing the corporate veil.  *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008); *Seminole Boatyard, Inc. v. Christoph*, 715 So. 2d 987, 990 (Fla. 4th DCA 1998) (citing *Hillsborough Holdings*, 166 B.R. at 468-69); *see also U-Haul Intern., Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1043 (9th Cir. 1986) (reasoning that the alter ego theory under *Sykes* requires fraudulent or misleading conduct to be directed at the plaintiff); *Solomon v. Betras Plastics, Inc.*, 550 So. 2d 1182, 1184-85 (Fla. 5th DCA 1989) (Cobb, J., dissenting) ("[T]he demonstrated improper conduct must be the proximate cause of the alleged loss.").  Accordingly, BCS must prove that (1) Goble is the alter ego of NAC; and (2) NAC was organized or used by Goble for an improper purpose that caused injury to BCS.  *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468-69.

Even if Goble is the alter ego of NAC, there still must be a showing of "improper conduct" by Goble that damaged BCS in order to pierce NAC's corporate veil.  *Sykes*, 450 So. 2d at 1121; *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468-69.  In defining improper conduct for purposes of piercing the corporate veil, the Eleventh Circuit quoted the Supreme Court of Florida, stating:

-10-

"[i]mproper conduct is present only in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose." *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998) (quotation marks and alterations omitted) (quoting *Sykes*, 450 So. 2d at 1117). Conduct may also be deemed improper "where the corporation was employed . . . for fraudulent or misleading purposes, was organized or used to mislead creditors or to perpetrate a fraud upon them, or to evade existing personal liability." *Steinhardt v. Banks*, 511 So. 2d 336, 339 (Fla. 4th DCA 1987) (quoting *Tiernan v. Sheldon*, 191 So. 2d 87, 89 (Fla. 4th DCA 1966)); *see also Barkett v. Hardy*, 571 So. 2d 13, 14 (Fla. 2d DCA 1990) (noting that the fact that corporate formalities were not observed, that a corporation was a vehicle for the personal interests of the shareholder, that it lacked equity capital, and that its affairs were dominated by another did not constitute improper conduct for purposes of piercing the corporate veil). As further explained by the Florida Supreme Court:

> The rule that [the] corporate entity will be disregarded where [the] name of [a] corporation is used by [the] stockholders in transactions to mislead creditors or perpetrate fraud on them is but a logical sequence of the principle that a corporation cannot be formed for the purpose of accomplishing fraud or [some] other illegal act, under the guise of [the] fiction that the corporation is [a] legal entity separate and distinct from its members, since when fraud or [an] illegal act is attempted, [that] fiction will be disregarded by the court and the acts of the real parties dealt with as though no corporation had been formed.

*Sykes*, 450 So. 2d at 1117 (quoting *Mayer v. Eastwood-Smith & Co.*, 164 So. 684, 687 (Fla. 1935)). Thus, the facts when viewed in BCS's favor must show that Goble used NAC's corporate form (1) as a mere sham or (2) to mislead BCS, perpetrate a fraud upon it, or evade existing personal liability. *Johnson Enters. of Jacksonville, Inc.*, 162 F.3d at 1320; *Steinhardt v. Banks*, 511 So. 2d 336, 339 (Fla. 4th DCA 1987).

**B. BCS's Allegations that Goble Improperly Used NAC's Corporate Form**

BCS sufficiently pled that Defendant Goble improperly used NAC's corporate form by alleging that Goble entered the Amended Agreement on behalf of NAC in 2004 with the intent to breach the Agreement by not paying any royalties to BCS, to ease his personal financial difficulties by stealing BCS's software, and to avoid personal liability. (Case No. 07-1503, Doc. No. 141 at 12; Doc. No. 98 at 9.) These allegations are neither raised by BCS in opposition to Defendant Goble's Motion for Summary Judgment nor supported by the evidence in the record[3] and are deemed abandoned. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (internal citations omitted). In opposing summary judgment, BCS asserts a different theory of how Defendant Goble improperly used NAC's corporate form:

> Goble has utilized NAC for an improper purpose in the context of the BCS contract. Goble, as the sole decision maker at NAC (Ex. 10, p. 5, ¶ 24; Ward p. 2, ¶ 3-4), made the decisions for NAC to enter into the Amendment with BCS. NAC then began experiencing financial difficulties in 2007. (Ex. 10, p. 4, ¶ 17). Goble also knew he might have to renegotiate the BCS contract when it expired on January 31, 2008, if the BrokerTrak software was not completed. (Goble Affidavit p. 6, ¶ 29). Knowing this, Goble personally made the decision to decompile and steal the BCS source code. (Prager Declaration, Exhibit 1 ("Prager"), p.10-11, ¶ 26). NAC/Goble decompiled the software so that NAC could save money by finishing the BrokerTrak project on time. (Ex. 7, p.5, ¶ 29). As set forth above, NAC's assets are Goble's assets. Thus, Goble had NAC take this action for his own financial benefit. Goble did this knowing NAC would probably face liability for breaching the contract and stealing the software. Goble took these actions regardless of the liability NAC

---

[3] There is no evidence in the record that Goble suffered personal financial difficulties in 2004 or that he intended to steal or decompile BCS's software when he signed the Agreements in 2004.

would incur and now blames NAC for the decompiling actions. It is therefore reasonable to infer that Goble thought he could avoid personal liability for his actions, while still benefiting [sic] from those actions, if he hid behind the corporate structure of NAC. In this way, Goble abused the corporate structure of NAC.

(Case No. 07-1503, Doc. No. 122 at 6-7.) In summary, BCS claims that Goble improperly used NAC's corporate form in 2007 when he realized that the BrokerTrak C++ project would not be completed on time and decided to decompile the BCS source code in order to save NAC money. BCS further claims that such conduct was for Goble's own personal financial benefit, as NAC's assets are Goble's assets. (*Id.*) However, the fact that Defendant Goble, as sole shareholder of NAC, would profit from a timely completion of the BrokerTrak C++ project cannot support a finding of improper conduct sufficient to pierce the corporate veil. *See Ally v. Naim*, 581 So. 2d 961, 963 (Fla. 3d DCA 1991) (holding that a sole shareholder's receipt of all corporate income does not, by itself, support piercing the corporate veil). At most then, BCS alleges that Goble intentionally caused NAC to breach the Amended Agreement and convert BCS's software by decompiling BCS's software in order to complete the BrokerTrak C++ project by the expiration of the Amended Agreement on January 31, 2008. Even if admissible facts establish this conduct by Defendant Goble, NAC's corporate veil should not be pierced because such conduct does not involve the use of NAC's corporate form as a sham or to mislead or perpetrate a fraud on BCS.

As alleged in the Second Amended Complaint, Defendant Goble entered the Amended Agreement on behalf of NAC in 2004 with the intent to breach the Agreement by not paying any royalties to BCS, to ease his personal financial difficulties by stealing BCS's software, and to avoid personal liability. (Case No. 07-1503, Doc. No. 141 at 12.) Thus, Goble allegedly used NAC as a sham because he used NAC to contract with BCS merely to obtain access to BCS's software and steal it for personal profit. (*Id.*) Under BCS's current theory for improper use of the corporate form,

-13-

however, Defendant Goble did not allegedly form the intent to steal and decompile BCS's software when he entered into the Amended Agreement in 2004. Rather, he allegedly formed the intent to steal and decompile in 2007 when NAC was suffering financial problems and he realized that the BrokerTrak C++ conversion project might not be completed before the expiration of the Amended Agreement. (Case No. 07-1503, Doc. No. 108-1 at 6; Doc. No. 122 at 6-7; Doc. No. 125-6 at 5; Doc. No. 125-1 at 11.) Goble treated NAC as a valid corporation, not a sham, by executing the Amended Agreement on behalf of NAC in 2004 and then acknowledging through his actions in 2007 that NAC was bound by the term of the Amended Agreement. (Case No. 07-1503, Doc. No. 125-3.) Accordingly, BCS is relying on the second type of improper conduct to pierce NAC's corporate veil, that being conduct "to mislead creditors or to perpetrate a fraud upon them, or to evade existing personal liability."[4] *Steinhardt*, 511 So. 2d at 339.

As stated above, BCS alleges that Goble intentionally caused NAC to breach the Amended Agreement and convert BCS's software by decompiling BCS's software in order to complete the Brokertrak C++ project by the expiration of the Amended Agreement. Causing a corporation to intentionally breach a contract or commit conversion, without more, does not mislead or defraud creditors such that the corporate veil should be pierced. *Steinhardt*, 511 So. 2d at 339; *see also Ally*, 581 So. 2d at 962-63 (noting that the fact that business affairs have been poorly handled, without more, does not justify piercing the corporate veil). However, creditors are defrauded incident to a breach of contract or act of conversion where the breaching alter ego transfers funds out of the corporation such that the corporation's creditors cannot collect on their claims. *See Bookworld*

_____

[4] BCS does not allege and there are no facts in the record that Goble had any personal liability to BCS predating the Amended Agreement.

*Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1361 (M.D. Fla. 2007); *Sykes*, 450 So. 2d at 1117, 1119-20; *Advertects, Inc. v. Sawyer Indus., Inc.*, 84 So. 2d 21, 24 (Fla. 1955).  BCS does not allege and the record does not reflect that Goble depleted NAC's assets such that BCS could not recover its damages from NAC.  Thus, even if Goble's actions caused NAC to breach the Amended Agreement or convert BCS's software, he cannot be held personally liable because his conduct did not involve any improper use of NAC's corporate form.  Accordingly, summary judgment should be granted for Defendant Goble on Plaintiff BCS's claims for breach of contract and conversion.[5]

## III.    Lanham Act

BCS asserts a claim for reverse passing off of its proprietary software against Defendant Goble under Section 43(a) of the Lanham Act, 11 U.S.C. § 1125(a) (2009).  (Case No. 07-1503, Doc. No. 122 at 16.)  Reverse passing off occurs when a producer "misrepresents someone else's goods or services as his own" and consists of four elements: (1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin.  *Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc.*, 457 F.3d 1269, 1277 (Fed. Cir. 2006).

As to the first element, the parties do not dispute that the software at issue originated with BCS.  (Case No. 07-1503, Doc. No. 125-1 at 2.)  In arguing that a genuine issue of material fact exists as to the second element, BCS cites only to Goble's responses to certain interrogatories:

---

[5] Having found that NAC's corporate veil should not be pierced, it is unnecessary to discuss Goble's argument that BCS's claims to pierce NAC's corporate veil should be stayed to allow the bankruptcy trustee for NAC to bring such claims.  (Doc. No. 107 at 12-13.)

1.      Do YOU ("YOUR" and/or "YOU" refers hereinafter to Richard L. Goble, acting on behalf of himself or North American Clearing, Inc. ("NAC"), and/or any employee, agent, officer, contractor or other person or entity working under Mr. Goble's supervision, direction, suggestion, instruction, or control) contend that BCS remained the owner of the BCS software after entering into the First Amendment to Software Licensing Agreement dated June 10, 2004 (hereinafter, the "FIRST AMENDMENT")?

RESPONSE: GOBLE objects to the definition of "YOUR and/or YOU" as being vague and overbroad.  GOBLE is answering these interrogatories in his individual capacity and does not know if NAC or any of its employees, agents, officers, contractors, or other person or entity would have different answers to the interrogatories.  Subject to his objections, no.

2.      Please state all facts supporting YOUR response to Special Interrogatory No. 1.

RESPONSE: GOBLE refers to the First Amendment.  Additionally, because NAC employees assisted in writing the code, NAC became an owner.

(Case No. 07-1503, Doc. No. 125-5 at 2.)  Although Goble admitted that NAC was "an"[6] owner of

the BCS software and a claim of ownership may constitute false designation of origin,[7] there is no

evidence in the record that Defendant Goble personally claimed to own any BCS software.  Thus,

BCS's argument for establishing false designation of origin by Goble must be rejected.

---

[6]  The word "an" makes unclear whether other persons or entities also owned BCS's software.

[7]  A claim of ownership must, *inter alia*, be made "in commerce" to constitute false designation of ownership.  *See* 15 U.S.C. § 1125(a); *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1250-51 (11th Cir. 2009) (noting that section 43(a) of the Lanham Act only concerns actions "in commerce.").  In *Montgomery v. Noga*, 168 F.3d 1282 (11th Cir. 1999), the defendant falsely designated the origin of the plaintiff's software by incorporating the plaintiff's software into its own software, referring to the plaintiff's software in the help menu of its own software, and displaying to the user that the help menu was "copyrighted and owned" by the defendant.  *Id.* at 1298-99.  Unlike the claim of ownership displayed in the software in *Montgomery*, Goble's claims that NAC owned the software made in responses to interrogatories are not actions "in commerce" and thus cannot establish false designation of origin.

BCS sufficiently pled that Goble falsely designated the origin of BrokerTrak by changing its name to BOS. (Case No. 07-1503, Doc. No. 98 ¶ 72; Doc. No. 141 at 14.) However, this allegation is neither raised by BCS in opposition to Defendant Goble's Motion for Summary Judgment nor supported by the evidence in the record[8] and is deemed abandoned. *See Resolution Trust Corp.*, 43 F.3d at 599. Finding no evidence in the record that Goble falsely designated the origin of any software, summary judgment for Goble is appropriate on this claim.

## IV. FDUTPA

FDUTPA broadly declares unlawful any unfair or deceptive acts or practices committed in the conduct of any trade or commerce. § 501.204(1), Fla. Stat. (2009). Section 501.211 provides that any person[9] who has suffered a loss as a result of such practices may commence a private action for actual damages, attorney's fees, and court costs. § 501.211(2), Fla. Stat. A claim for damages under FDUTPA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortgage Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).

---

[8] Defendant Goble testified that BrokerTrak's name was never changed to BOS and that BOS was a term used by the NAC back office to refer to all of the BCS software other than BrokerTrak. (Case No. 07-1503, Doc. No. 125-5 at 5; Doc. No. 125-4 at 123.) No evidence in the record disputes these facts.

[9] Plaintiffs cite *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So. 2d 672 (Fla. 3d DCA 2000) and *Warren Tech., Inc. v. Hines Interests Ltd. P'ship*, 733 So. 2d 1146 (Fla. 3d DCA 1999), caselaw predating the 2001 amendments to FDUTPA, for the proposition that BCS cannot maintain a FDUTPA claim against Goble as a matter of law because BCS is not a consumer. (Case No. 07-1503, Doc. No. 107 at 18.) However, the 2001 Amendments to FDUPTA broadened its scope to allow any person or entity who has suffered a loss as a result of unfair or deceptive acts or practices to commence a private action for actual damages. § 501.211(2), Fla. Stat. (2009); *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1145-46 (M.D. Fla. 2007). Thus, summary judgment cannot be granted for Defendant Goble merely because BCS is not a consumer.

As to the first element, FDUTPA applies even if the unfair or deceptive act involves only a single party, a single transaction, or a single contract. *PNR, Inc. v. Beacon Property Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). However, conduct constituting breach of contract is actionable under FDUTPA only if the conduct underlying the breach is, by itself, unfair or deceptive. *Id.* at 777 n.2; *Rebman v. Follett Higher Educ. Group, Inc.*, 575 F. Supp. 2d 1272, 1279 (M.D. Fla. 2008). "An unfair practice is 'one that offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *PNR, Inc.*, 842 So. 2d at 777 (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001)). "Deception occurs if there is a 'representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Id.* (quoting *Millennium Commc'ns. & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000)). Piercing the corporate veil is not necessary to hold an individual officer liable under FDUTPA; however, the aggrieved party must show that the individual was a "direct participant" in the improper dealings. *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1074 (Fla. 5th DCA 2008).

First it must be determined whether based on the evidence any acts by Defendant Goble are unfair or deceptive. BCS alleged that Goble committed an unfair or deceptive act by personally decompiling BCS's software, disabling or ordering others to disable the time lock embedded in the BCS software, and changing BrokerTrak's name to BOS. (Doc. No. 98 at 21-24.) Plaintiff does not point the Court to admissible evidence in the record showing that Goble disabled or ordered others

to disable the time lock[10] or changed BrokerTrak's name to BOS.   Instead Plaintiff presents the affidavit of Art Prager to support the contention that Goble personally decompiled BCS's software. (Doc. No. 146 at 2-8.)  In such affidavit, Prager stated that "[i]n September 2007, an NAC officer, John Busaca, contacted BCS and told me that Goble had the BCS program decompiled, possibly in India" and that Busaca also told Prager that Goble said, "I don't care if he (BCS) cuts us off tomorrow – I have all his code right here." (Case No. 07-1503, Doc. No. 125-1 at 11.)  Defendant Goble moves to strike these statements as inadmissible hearsay.  (Doc. No. 146 at 10.)

Prager's statements about what Busaca told him are hearsay because they are used to prove the truth of the out of court and unsworn assertions of a non-witness, Busaca.  Fed. R. Evid. 801(c). Plaintiff BCS cites to *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996), for the proposition that hearsay statements may be relied upon to overcome summary judgment if such statements can be "reduced to an admissible form at trial." (Doc. No. 150 at 3.)  However, BCS fails to show any basis upon which the statements of Prager could be admissible.  Busaca was not deposed and has filed no affidavit.

Counsel for BCS avers that Busaca, the hearsay declarant, will be subpoenaed to testify at trial.  (Case No. 07-1503, Doc. No. 150-1 at 2.)  Indeed, testimony by Busaca as to what Goble told him might be admissible as an admission by a party opponent.  *See* Fed. R. Evid. 801(d)(2)(A). However, Prager's description of Busaca's supposed testimony and counsel's assurance that Busaca will be subpoenaed, without more, cannot transform Busaca's hearsay statements into admissible

---

[10]  The record merely reflects that NAC, not Defendant Goble, decompiled the updated BCS software in order to determine if any time locks were embedded in the software. (Case No. 07-1503, Doc. No. 125-7 at 3.)  There is no dispute that a time lock set for January 31, 2008, was embedded in the BCS software.  (*Id.*; Case No. 07-1503, Doc. No. 98 ¶ 92.)

evidence for purposes of summary judgment. *See Bush v. Barnett Bank of Pinellas County*, 916 F. Supp. 1244, 1256 (M.D. Fla. 1996) ("[H]earsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because a third party's description of supposed testimony is not suitable grist for the summary judgment mill.") (quoting *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995)). Stated more precisely, "the out-of-court statement made to the witness (the Rule 56(c) affiant or the deposition deponent) must be admissible at trial for some purpose." *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999).

No other part of the record supports the alleged statements made by Busaca to the affiant, Prager. Because BCS has the burden of persuasion at trial, any facts opposing summary judgment must be admissible as substantive evidence, not merely to impeach. *Id.* at 1324 n.16, 1325; *McMillian*, 88 F.3d at 1184. Busaca's statements to Prager are hearsay without exception and thus are inadmissible as substantive evidence. *See* Fed. R. Evid. 802, 803. Accordingly, Goble's motion to strike these averments must be granted.

Prager also asserted his personal belief as to why Goble decompiled BCS's software:

I believe that Goble had the software decompiled because Goble determined that NAC would not be able to finalize the new program prior to the termination of the license to use the Clipper software. Despite this breach, NAC filed a complaint on September 12, 2007 for breach of contract and declaratory relief. I believe that the only reason NAC filed their Complaint was to beat BCS to the courthouse since NAC knew that BCS was aware that Goble and NAC had stolen the BCS software.

(Case No. 07-1503, Doc. No. 125-1 at 5-6.) Defendant Goble's motion to strike these statements for lack of personal knowledge by Prager must be granted because an "affidavit based on nothing more than information and belief is insufficient to survive a motion to strike." (Case No. 07-1503, Doc. No. 146 at 3); *Underwriters at Lloyds v. FedEx Freight System, Inc.*, No. 8:07-CV-212-T-EAJ, 2008 WL 2901049, at *2 (M.D. Fla. July 23, 2008) (internal quotations omitted). Prager is not

competent to testify as to what may or may not have been going on in Goble's mind, and Prager's sworn testimony to this effect constitutes impermissible speculation. There being no admissible evidence in the record that Goble personally decompiled BCS's software[11] or committed any other deceptive or unfair act, summary judgment should be granted for Defendant Goble on the FDUTPA claim.

### Conclusion

Based on the foregoing, the Motion for Summary Judgment by Defendant Richard L. Goble (Case No. 07-1503, Doc. No. 100) is **GRANTED**. The Renewed Motion to Strike Portions of the Appendix of Exhibits in Support of BCS's Opposition to Motion for Summary Judgment by Defendant Richard L. Goble (Case No. 07-1503, Doc. No. 146) is **GRANTED IN PART AND DENIED IN PART** in accordance with this Order.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on October 5, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

---

[11] Joshua Carroll, a programmer for NAC, averred that BCS's software was decompiled for the purpose of continuing with the BrokerTrak C++ project and to determine what changes were made to the updated versions of BCS's software that NAC received. (Doc. No. 125-6 at 5.) However, Carroll did not testify as to any actions by Defendant Goble. BCS also claims, without citing any supporting facts, that Defendant Goble took actions that unfairly undermined BCS's ownership in its software, devalued the software, and unfairly denied BCS the benefit of its bargain under the Amended Agreement. (Case No. 07-1503, Doc. No. 122 at 20.) Such "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

Copies furnished to:

Counsel of Record